# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-02236-SCT

*EDDIE GILMER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2004 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JULIE ANN EPPS |
| | MICHAEL V. WARD |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JACOB RAY |
| | W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | DAVID CLARK |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/10/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1.    This case comes to the Court on first impression as to whether the evidence was sufficient to support a conviction under the "video voyeur" statute, Miss. Code Ann. §97-29-63 (Rev. 2006). Finding that the evidence provided satisfied the statute, we affirm the defendant's conviction.

## FACTS AND PROCEDURAL HISTORY

¶2.     Eddie Gilmer was an elected constable in Madison County at the time of his alleged criminal behavior.  He served warrants in Madison County, including at the Pear Orchard Apartments in Ridgeland, Mississippi, where Debra Clayton occupied a second-floor apartment. In March 2003, Clayton noticed that Gilmer would arrive at the Pear Orchard Apartments in his official vehicle marked "Madison County Constable, District Number 3, Eddie Gilmer" around 9:00 p.m. and park his car in a space in the apartment complex parking lot with his vehicle facing Clayton's apartment about 87 feet from her balcony.  Gilmer would stay in his parked car for an hour or an hour and a half before driving away.

¶3.     Clayton contacted the police about Gilmer's suspicious behavior.  Consequently, police officers conducted five separate surveillance operations.  Officers captured Gilmer on tape, recording Clayton with a hand-held video camera while she was sitting inside her apartment in front of her balcony door, which was open about eighteen inches. The evidence demonstrated that, while filming, Gilmer often zoomed in on Clayton's chest and crotch area. Gilmer was indicted on May 23, 2003, charged with ten counts of photographing a person in privacy without permission.  A jury trial culminated in a conviction on counts six through ten, and, on August 20, 2004, for each count the trial court  sentenced Gilmer to serve a term of five years, each to run consecutively, in the custody of the Mississippi Department of Corrections.  The judge suspended the sentences for two counts, resulting in a sentence of fifteen years in prison and five years of supervised probation upon release.

¶4.     Gilmer filed a Motion for New Trial and/or Judgment of Acquittal Notwithstanding the Verdict (JNOV) on August 23, 2004. The trial court denied Gilmer's motion, and Gilmer

2

timely filed an appeal to this Court seeking reversal of that denial as well as of the jury verdict of guilty. Gilmer raises five errors on appeal:

I. **The Trial Court Erred in Overruling Gilmer's Motions for Directed Verdict as Well as His Post-trial Motions for JNOV and New Trial Due to the Insufficiency of the Evidence.**

II. **The Trial Court Committed Reversible Error in Overruling Gilmer's Motion to Quash the Indictment for Failure to State an Essential Element of the Offense.**

III. **The Statute Is Unconstitutionally Vague and Overbroad on its Face and as Applied to Gilmer.**

IV. **The Trial Court Erred in Overruling Gilmer's Objection to the Instructions Which Failed to Require That the Jury Find That Clayton Was in a Place Where a Person Would Intend to Be in a State of Undress and Have a Reasonable Expectation of Privacy.**

V. **This Court Should Reverse Gilmer's Conviction Because the Jury Was Not Told That it Had to Find That Clayton's Expectation of Privacy, If Any, Had to Be Reasonable under the Circumstances.**

## DISCUSSION

I. **Whether the Trial Court Erred in Overruling Gilmer's Motions for Directed Verdict as Well as His Post-trial Motions for JNOV and New Trial Due to the Insufficiency of the Evidence.**

¶5. This Court reviews whether the Court erred in denying a motion for directed verdict under a de novo standard of review. *White v. Stewman*, 932 So. 2d 27, 32 (Miss. 2006). "[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a

3

conviction.'" ***Ivy v. State***, 949 So. 2d 748, at *9 (Miss. 2007) (citing ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968)).

¶6.     When considering a trial court's denial of a motion for judgment notwithstanding the verdict, the standard of review is de novo. ***Poole v. Avara,*** 908 So. 2d 716, 726 (Miss. 2005). The trial court must view the evidence in the light most favorable to the non-moving party and look only to the sufficiency, and not the weight of the evidence. ***Id.***  When evaluating the denial of a motion for new trial, this Court will overturn the trial court only if it abused its discretion in that it denied a new trial though the verdict was against the overwhelming weight of the evidence. ***Id.*** at 727.

¶7.     The weight and the sufficiency of the evidence are not synonymous. ***Id.*** at 726. When determining whether the evidence was sufficient, the critical inquiry is whether the evidence is of such quality that reasonable and fairminded jurors in the exercise of fair and impartial judgment might reach different conclusions. ***Id.*** When determining whether the verdict was against the overwhelming weight of the evidence, we will not order a new trial unless we are convinced that the verdict was contrary to the substantial weight of the evidence so that justice requires that a new trial be granted. ***Id.*** at 727.

¶8.     Gilmer places in dispute for the first time the interpretation of Miss. Code Ann. §97-29-63, the statute under which he was convicted, asserting that according to the plain language of the statute, the evidence was insufficient to prove two of the elements of the statutory crime.

¶9.     The interpretation of a statute is reviewed de novo by this Court. ***McLamb v. State***, 456 So. 2d 743, 745 (Miss. 1984). The first question in interpreting a statute is whether the

4

statute is ambiguous. *Harrison v. State*, 800 So. 2d 1134, 1137 (Miss. 2001). When a statute is unambiguous, this Court applies the plain meaning of the statute and refrains from the use of statutory construction principals. *Pinkton v. State*, 481 So. 2d 306, 309 (Miss 1985). The court may not enlarge or restrict a statute where the meaning of the statute is clear. *State v. Traylor*, 100 Miss. 544, 558-59, 56 so. 521, 523 (1911). In interpreting statutes, this Court's primary objective is to employ that interpretation which best suits the legislature's true intent or meaning. *Clark v. State ex. rel Mississippi State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980).

¶10.    Miss. Code Ann. §97-29-63 (Rev. 2006) reads:

> Any person who with lewd, licentious or indecent intent secretly photographs, films, videotapes, records or otherwise reproduces the image of another person without the permission of such person when such a person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, fitting room, dressing room or bedroom shall be guilty of a felony and upon conviction shall be punished by a fine of Five Thousand Dollars ($5,000.00) or by imprisonment of not more than five (5) years in the custody of the Department of Corrections, or both.

¶11.    We find that Miss. Code Ann. §97-29-63 is not ambiguous. The statute provides four elements to this statutory crime: (1) intent – "lewd, licentious or indecent intent;" (2) act – "secretly photograph[ing], film[ing], videotap[ing], record[ing] or otherwise;" (3) lack of consent – "without the permission of [the victim];" and (4) protected location – "when such a person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth,

5

locker room, fitting room, dressing room or bedroom." *See* Miss. Code Ann. §97-29-63 (Rev. 2006).

¶12.    Regarding the first element, lewd intent, and the third element, lack of consent, Gilmer does not raise insufficiency of evidence of the State's proof on appeal.    Gilmer's first assertion of insufficiency concerns the second element, the act of "secretly" recording the victim. Gilmer contends that the evidence did not sufficiently show he "secretly" recorded Clayton based on the fact that Clayton was aware that Gilmer was recording her on each occasion for which he was convicted.

¶13.    As we are applying the plain meaning of this statute, we will look to Webster's Dictionary. "Secretly" is defined as "in secret," "in secrecy," and "not openly." *Webster's Third New International Dictionary unabridged* 2052 (1986). Of numerous definitions for "secret," two pertinent ones are "done or undertaken with evident purpose of concealment" and "constructed so as to elude observation or detection." *Id.*

¶14.    The undisputed facts are that Gilmer recorded Clayton starting around 9:00 at night, sitting inside his vehicle, the interior of which was dark, about 87 feet away from Clayton's apartment, using a camera and its zoom feature and carrying in his vehicle two sets of binoculars. The time of day, dark location, distance from Clayton's apartment and equipment for producing close-up recordings from such a distance clearly indicate an attempt by Gilmer to conceal his actions and elude observation or detection. Therefore, the facts were sufficient to support a jury finding beyond a reasonable doubt that Gilmer acted "secretly" in recording Clayton.

6

¶15. Gilmer further contends that the evidence is insufficient to prove the final element, the location element – that the recording took place "where a person would intend to be in a state of undress *and* have a reasonable expectation of privacy." However, as the State asserts, Gilmer has overlooked a significant portion of the statute within the location element.

¶16. The entirety of the location element reads that the criminal act of recording must take place: "when such a person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, fitting room, dressing room or bedroom." *See* Miss. Code Ann. §97-29-63 (Rev. 2006). As this is an issue of first impression, we will parse each phrase in this portion of the statute in order to promote clarity.

¶17. The language "when such a person is located in a place" introduces the location element and encompasses every phrase in that element which follows. *Id.* Next, qualifying a location as covered under this statute, are two descriptors: (1) "where a person would intend to be in a state of undress" and (2) "have a reasonable expectation of privacy." *Id.* This is the language which Gilmer asserts provides necessary elements which must be proven. We agree.

¶18. However, Gilmer fails to acknowledge that immediately following these descriptors, the statute explicitly names certain places, which fit the preceding descriptors, "including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, fitting room, dressing room or bedroom."*Id.* It is obvious that the Legislature intended by using the language "including"

7

to designate as a matter of law a list of places which were included in, or satisfied, the preceding descriptors.

¶19. Gilmer maintains that the listing of locations which satisfy the location element is redundant with regard to the preceding descriptors. However, this Court is obliged, whenever reasonable, to reach an interpretation which gives effect to all the statutory language. ***Davis v. Miller***, 202 Miss. 880, 32 So. 2d 871, 873 (Miss. 1947). This obligation is easily achieved and in accord with a logical reading of the statute. Clearly, all locations in which a person is protected from voyeurism under this statute were not covered by the Legislature in its list as evidenced by its language "including, but not limited to." This language suggests that the list of places was not exhaustive and that places other than those listed might also satisfy the descriptors.

¶20. Consistent with the plain language of the statute, when the prohibited recording happens in one of the explicitly listed locations, the State need not prove at trial, and this Court need not analyze on appeal, whether these places are "where a person would intend to be in a state of undress and have a reasonable expectation of privacy," as these certain places are locations deemed as a matter of law to satisfy such qualifications. However, when the prohibited recording occurs in a location other than one of those explicitly listed, the State must show at trial and this Court must determine on appeal whether the location was one "where a person would intend to be in a state of undress and have a reasonable expectation of privacy." Accordingly, the inquiry as to whether the evidence was sufficient to meet the location element, becomes whether the two descriptors are satisfied as a matter of law in that

8

the recording happened in one of the listed locations and if not, whether the evidence was sufficient to satisfy the two descriptors.[1]

¶21.    The places which meet the location element as a matter of law are: "*private dwellings* **or** any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, fitting room, dressing room or bedroom." Miss. Code Ann. §97-29-63 (Rev. 2006) (emphasis added). The "or" indicates that there are two categories of places in the list. The first category is private dwellings. The second category of places consists of public and private facilities, a number of which are named. Without question, proof that Gilmer recorded Clayton while she was in her apartment is equivalent to proving that she was recorded while in her private dwelling.

¶22.    The location element of Miss. Code Ann. §97-29-63 is satisfied by proving that at the time of the criminal act, the victim was in a place which meets the two descriptors in the statute. Further, we further hold that in accordance with the plain meaning of the statute,

---

[1] We take seriously our responsibility to neither enlarge nor restrict a statute. ***Traylor***, 100 Miss. at 558-59. The dissent alleges that we have restricted the statute in doing away with a portion of the location element. Quite the contrary, we have parsed the requirement to give effect to all the words in the statute. The proof of location must *either* meet the two descriptors, in which case both must be proven, *or* establish that the victim was in one of the explicit locations named in the statute, which according to the structure and plain language of the statute indicate that such locations are deemed by the legislature as meeting the two descriptors. These places are *per se* places where a person intends to be in a state of undress and has a reasonable expectation of privacy. It seems the dissent would have us discard such a list of places as meaningless and superfluous. The legislators did not choose to precede the list with potentially ambiguous language, such as "for example" but with the word "including" which indicates that the preceding word or phrase is definitely encompassed by the subsequent word or phrase. The only reading which gives effect to the plain meaning of each word and phrase in the statute is that which acknowledges that the Legislature laid out two routes by which the State can prove the location element. We simply give effect to each phrase. The dissent attempts to point out a restrictive approach by the majority, when, in fact, it is the dissent who attempts to restrict the language of the statute and disregard an entire listing of locations in the statute as superfluous.

9

proving that the victim was in one of the places explicitly listed in the statute when the crime occurred is, as a matter of law, sufficient to prove that the victim was in a place which satisfies the two statutory descriptors of the protected locations. Adopting Gilmer's interpretation would, in direct contradiction of precedent, restrict the explicit language of the statute and not give effect to the legislative intent. Therefore, we give effect to the entire statute and find that, as it is undisputed that Clayton was in her private dwelling at the time Gilmer recorded her, there was sufficient evidence that the location element was met. Thus, Gilmer's first assertion of error is without merit, and the trial court did not err in denying Gilmer's motion for directed verdict, JNOV or a new trial.

**II.** **Whether the Trial Court Committed Reversible Error in Overruling Gilmer's Motion to Quash the Indictment for Failure to State an Essential Element of the Offense.**

¶23. The second assertion of error Gilmer raised is that the indictment is defective because it fails to include an essential statutory element.

¶24. The question of whether an indictment is fatally defective is an issue of law, and, therefore, is reviewed de novo by this Court. *Peterson v. State*, 671 So. 2d 647, 652 (Miss. 1996). An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense. *Hamling v. United States*, 418 U.S. 87, 177, 94 S. Ct. 2887, 2907, 41 L. Ed.2d 590 (1974); *Love v. State*, 52 So. 2d 479, 472 (Miss. 1951). Gilmer does not raise error with the sufficiency of the facts but with the completeness of the elements.

10

¶25. For each count, the indictment read that Gilmer:

> did willfully, unlawfully and feloniously and with lewd, licentious, or indecent intent, secretly videotape and record the image of person, Debra Clayton, without her permission, while Debra Clayton was inside of her apartment having a reasonable expectation of privacy, in the City of Ridgeland, Madison County, Mississipi, in violation of Mississippi Code Annotated §97-29-63 (1972), as amended.

¶26. Gilmer contends that the location element is incomplete in that it is lacking the statutory language "when such a person is located in a place where a person would intend to be in a state of undress." *See* Miss. Code Ann. §97-29-63 (Rev. 2006). We reject that argument as this Court has held:

> It is not essential, in an indictment for a statutory crime, that the exact descriptive language of the statute be used. Equivalent words of substantially the same meaning as those of the statute may be substituted. Where the language used in the indictment is sufficiently specific to give notice of the act made unlawful, and exclusive enough to prevents its application to other acts, it is sufficient.

*Price v. State*, 898 So. 2d 641, 654 (Miss. 2005). As mentioned in the first issue, the statute has defined a private dwelling as a place where a person would intend to be in a state of undress. Clayton being "inside of her apartment," as stated in the indictment, is equivalent to her being inside her private dwelling. Thus, as the statute assigns to the language in the indictment the same meaning as the language the absence of which Gilmer asserts is fatal, the indictment language is sufficient. Gilmer's second assertion of error is without merit.

### III. The Statute Is Unconstitutionally Vague and Overbroad on its Face and as Applied to Gilmer.

¶27. This Court reviews the constitutionality of Mississippi statutes *de novo*. ***Thoms v. Thoms***, 928 So. 2d 852, 855 (Miss. 2006).

11

¶28. Gilmer argues that Miss. Code Ann. §97-29-63 is overbroad. He cites *State v. Stevenson*, 613 N.W.2d 90 (Wis. 2000), to support his assertion that the Mississippi statute has a chilling effect on protected speech in that law enforcement, private investigators and reporters could be subjected to prosecution for legitimate activities such as filming a fully clothed person through an open window.

¶29. First, it should be noted that while it is raised as an assertion of error, Gilmer neither addressed nor briefed vagueness. Thus, that argument is procedurally barred. *Misso v. Oliver*, 666 So. 2d 1366, 1369-70 (Miss. 1996) (declining to address issues raised by the appellant when he did not comply with his affirmative duty to specifically address the issue and provide authoritative support for its position). Further, *Stevenson* addresses the overbreadth of the Wisconsin voyeurism statute, which is distinguishable from the Mississippi statute. The Wisconsin statute provides in pertinent part:

> (2) Whoever does any of the following is guilty of a Class E felony:
>
> (a) Takes a photograph or makes a motion picture, videotape or other visual representation or reproduction that depicts nudity without the knowledge or consent of the person who is depicted nude, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the taking or making of the photograph, motion picture, videotape or other visual representation or reproduction.

Wis. Stat. § 944.205(2)(a).

In finding the statute overbroad, the Wisconsin Supreme Court stated:

> [t]he statute not only properly prohibits Stevenson's surreptitious videotaping of his former girlfriend in the nude, but also improperly prohibits all visual expression of nudity without explicit consent, including political satire and newsworthy images.

12

> Wisconsin Stat. § 944.205(2)(a) does not limit its reach to original depictions of nudity but rather overreaches to all reproductions. It chills the ability to include copies of masterpieces like Michaelangelo's "David" in a book devoted to famous sculptures and also prevents the dissemination of materials that may portray nudity for health or educational purposes.

*Stevenson*, 613 N.W.2d at 95. Gilmer's reliance on *Stevenson* is misplaced because the grounds for the chilling effect of the Wisconsin statute are absent in the Mississippi statute. As the State asserts, the Wisconsin statute lacks a lewd-intent requirement and a victim-location requirement. The lewd-intent element of the Mississippi statute prevents an overbroad reach to legitimate recording of persons for legitimate purposes, such as political satire, newsworthy images, law enforcement surveillance, and socially valued artistic productions. Beyond the simple act of recording a person without his or her consent, the State must prove that the defendant recorded the victim with a lewd intent and that the defendant did so in a place which constitutes a protected location pursuant to the statute. The combination of the lewd-intent requirement and the victim-location requirement makes the Mississippi statute a much more narrowly tailored statute. In fact, since conviction under Miss. Code Ann. § 97-29-63 requires a showing that the defendant acted with a lewd intent, recordings which meet all the other statutory elements – secretly recording, lack of consent, and in a protected location, such recordings which might be properly undertaken by a police officer – are put in no danger by this statute.[2] Therefore, Gilmer's assertion as to the

---

[2] In order to prevent potential confusion resulting from the dissent's allegations of a due process violation in that we have removed the burden of proving lewd intent, this Court reiterates the requirement that the State must prove *each* element of this statutory offense in order to obtain a valid conviction. As for what is sufficient to prove this element, since Gilmer did not raise an issue of sufficiency of evidence of lewd intent, that issue is not before this Court, and therefore, we will not engage in an examination of the sufficiency of such evidence. *See Excello Feed Milling Co. v. United States Fidelity & Guaranty Co.*, 145 Miss. 599, 608 (1927) ("a ground for the reversal of

overbreadth of the Mississippi statute in that legitimate activities will be implicated is without merit.

**IV.** **The Trial Court Erred in Overruling Gilmer's Objection to the Instructions Which Failed to Require That the Jury Find That Clayton Was in a Place Where a Person Would Intend to Be in a State of Undress and Have a Reasonable Expectation of Privacy.**

**V.** **This Court Should Reverse Gilmer's Conviction Because the Jury Was Not Told That it Had to Find That Clayton's Expectation of Privacy, If Any, Had to Be Reasonable under the Circumstances.**

¶30. Gilmer's fourth and fifth designations of error concern alleged errors in the jury instructions and thus, will be addressed simultaneously. His fourth assignment of error asserts that the instruction incorrectly informed the jury that Gilmer could be found guilty, with regard to the victim-location element, upon the mere finding that Clayton was in her private dwelling at the time of the alleged criminal activity. Gilmer contends that this instruction is incorrect because it assumes that a private dwelling is a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy.

---

a judgment is waived when the brief of the appellant contains no reference thereto was expressly decided in *N. M. & C. R. R. Co. v. State*, 110 Miss. 290, 70 So. 355"); *McCaleb v. McCaleb*, 110 Miss. 486, 70 So. 563 (1915), modified, 113 Miss. 337, 74 So. 275 (1917) (a question, not raised either by assignment of error or mentioned in brief of the appellant, need not be considered on appeal).

We do note, however, that the lewd-intent element clearly distinguishes the police officers, who secretly recorded Gilmer without his consent for an evidentiary purpose, from Gilmer, against whom evidence was presented of his recording Clayton without her consent in a manner to conceal his activities, zooming in on Clayton's crotch and chest areas, engaging in back-and-forth hand motions behind the wheel during recording, and stating on the night of his arrest, "Ain't it funny what p**** will make you do?" As such, the dissent can rest assured that a per se violation of this statute is not established when a television reporter simply records persons in the locker room or when a private investigator simply records night-time adulterous activities. The dissent's conclusion that people all over the state are in danger of committing a felony simply because they are using a recording device is unfounded. The only person in danger of a conviction under this statute is one for whom each element, including lewd intent, can be proven beyond a reasonable doubt.

14

Gilmer's fifth assertion of error is that the jury instructions are defective since they do not inform the jury that it must find that Clayton had a subjective expectation of privacy as well as that her expectation must have been reasonable.

¶31.   The jury instruction for each of the ten counts read:

> If you find from the evidence in this case, beyond a reasonable doubt, that the Defendant Eddie Gilmer, did willfully, unlawfully, knowingly, and feloniously, in Madison County, Mississippi,
> 1. on or about the _____ day of _____, 2003,[3]
> 2. with lewd, licentious or indecent intent,
> 3. secretly photograph, film, videotape, record, or otherwise reproduce the image of Debra Clayton without the permission of the said Debra Clayton,
> 4. when Debra Clayton was located in her private dwelling where a person would intend to be in a state of undress and have a reasonable expectation of privacy; then you shall find the Defendant, Eddie Gilmer, guilty as charged in Count I of the indictment.
> If the State has failed to prove any one or more of the above listed elements, beyond a reasonable doubt, then you shall find the Defendant not guilty.

¶32.   Each assertion fails for the same reason. As aforementioned, since the showing that the victim was "in her private dwelling" alone is sufficient to meet the victim location element, the finding beyond a reasonable doubt that the victim was "in her private dwelling" is alone a sufficient jury instruction with regard to that element of the statutory crime. Therefore, both of these errors are without merit.

**CONCLUSION**

¶33.   In order to obtain a conviction under Miss. Code Ann. §97-29-63 (Rev. 2006), four elements must be proven: (1) *mens rea* - lewd intent; (2) lack of consent; and (3) *actus reus* - secretly recording (4) in a protected location. This Court holds that the fact that a victim was

_____

[3]The ten counts with which Gilmer was charged occurred during April and May of 2003.

15

in her private dwelling when the defendant commited the *actus reus* is sufficient, according to the plain language of the statute, to satisfy the protected-location element. Accordingly, each of Gilmer's assertions of error are without merit, as each is based on a premise contrary to that holding. Therefore, we affirm the judgment of the Circuit Court of Madison County.

¶34. **COUNT VI: CONVICTION OF PHOTOGRAPHING A PERSON IN PRIVATE WITHOUT PERMISSION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT VII: CONVICTION OF PHOTOGRAPHING A PERSON IN PRIVATE WITHOUT PERMISSION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT VIII: CONVICTION OF PHOTOGRAPHING A PERSON IN PRIVATE WITHOUT PERMISSION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IX: CONVICTION OF PHOTOGRAPHING A PERSON IN PRIVATE WITHOUT PERMISSION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT X: CONVICTION OF PHOTOGRAPHING A PERSON IN PRIVATE WITHOUT PERMISSION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCE IN COUNTS VI, VII, VIII, IX AND X SHALL RUN CONSECUTIVELY WITH EACH OTHER. PURSUANT TO SECTION 47-7-33 or SECTION 47-7-34 MISSISSIPPI CODE OF 1972, THE EXECUTION OF THE LAST FIVE (5) YEARS OF THE SENTENCES IMPOSED IN COUNT IX AND COUNT X ARE STAYED AND THAT PORTION OF THE SENTENCE(S) IS/ARE SUSPENDED AND THE APPELLANT SHALL BE RELEASED ON SUPERVISED PROBATION FOR A TERM OF FIVE (5) YEARS WITH CONDITIONS UNDER THE SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.**

**WALLER, P.J., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES AND DICKINSON, JJ. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J. AND GRAVES, JJ.**

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶35. Because the majority incorrectly defines the elements of video voyeurism, in violation of fundamental principles of due process, I must respectfully dissent.

16

¶36.   As this Court recently noted, "[i]t is bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused." *Coleman v. State*, 947 So. 2d 878, 881 (Miss. 2006) (citing *McLamb v. State*, 456 So.2d 743, 745 (Miss. 1984)).   Chief Justice John Marshall wrote that this ancient rule of statutory interpretation  "is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department."  *U.S. v. Wiltberger*, 18 U.S. 76, 95, 5 L. Ed. 37, 42, 5 Wheat. 76 (1820). Judicial constructions not construing statutes in favor of the offender violate fundamental principles of due process.  *Duke v. U. of Tex.*, 663 F.2d 522, 526 (5th Cir. 1981), 527 (citing *Dunn v. U.S.*, 442 U.S. 100, 112, 99 S. Ct. 2190, 2197, 60 L. Ed. 2d 743 (1979); *Marks v. U.S.*, 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977); *Rabe v.Washington*, 405 U.S. 313, 92 S. Ct. 993, 31 L. Ed. 2d 258 (1972); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964)).  Finally, any "[a]mbiguities concerning the ambit of criminal statutes should be resolved in favor of lenity."  *Id.*  (citing *Busic v. U.S.*, 446 U.S. 398, 406, 100 S. Ct. 1747, 1753, 64 L. Ed. 2d 381 (1980); *Dunn*, 442 U.S. at 112; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 375, 93 S. Ct. 1652, 1663, 36 L. Ed. 2d 318 (1973); *U.S. v. Campos-Serrano*, 404 U.S. 293, 297, 92 S. Ct. 471, 474, 30 L. Ed. 2d 457 (1971); *McBoyle v. U.S.*, 283 U.S. 25, 27, 51 S. Ct. 340, 341, 75 L. Ed. 816 (1931); *U.S. v. Scrimgeour*, 636 F.2d 1019, 1022 (5th Cir. 1981); *Tenneco Oil Co. v. Padre Drilling Co.*, 453 S.W.2d 814 (Tex.1970)).

¶37.   Accordingly, the State was required to prove the following elements: (1) "lewd, licentious or indecent intent;" (2) "secretly photograph[ing], film[ing], videotap[ing],

17

record[ing] or otherwise reproduc[ing] the image of another person;" (3) without their permission; (4) when the other person "is located in a place *where a person would intend to be in a state of undress*;" and (5) *where that person would "have a reasonable expectation of privacy*." Miss Code Ann. § 97-29-63 (Rev. 2006) (emphasis supplied).

¶38.   Under the majority's interpretation, the State is able to meet the fourth and fifth elements merely by proving the person was located in a private dwelling. This is a clear violation of our rules of statutory construction, and results in a violation of due process. *Duke v. U. of Tex.*, 663 F.2d 522, 526 (5th Cir. 1981). The opinion neither addresses the age-old rule of construction regarding criminal statutes nor does it explain how its interpretation of the statute does not violate due process. Instead, the opinion relies on *Davis v. Miller*, 202 Miss. 880, 890, 32 So. 2d 871, 873 (Miss. 1947) in support of its liberal interpretation in favor of the state. *Davis* held that courts may not construe a statute such that a portion of it becomes meaningless. *Id.* (citing 50 Am. Jur., Statutes, Sec. 358, 361-64). This proposition actually undermines the majority's conclusion, for under its interpretation, the undress and privacy portions of the statute become meaningless. *Id.*

¶39.   The State presented no evidence that Clayton was "located in a place where a person would intend to be in a state of undress." This element cannot be met by the mere fact that she was inside her apartment. At all times, Clayton was fully clothed, seated in front of an open door and facing a public parking lot. Consistent with her testimony, reasonable persons would not intend to be in a state of undress while sitting in front of an open door. She repeatedly testified that she never intended to be undressed with the blinds or door open:

Q:     At anytime when the defendant was present, were you disrobed?

18

A: No.

Q: Were there occasions, however, in your home when you were disrobed?

A: As long as my window was shut and my blinds were pulled.

. . . .

Q: Would it be fair to say that you generally don't intend to be in a state of undress in your living room or den in front of a plate glass window with it open, do you?

A: Not open.

Q: Or with the blinds open. Would you agree with that?

A: Yes, I would.

¶40. Given that the State failed to provide sufficient evidence of an essential element of the crime, the trial court erred in refusing to grant a directed verdict.

¶41. The majority's broad interpretation of the crime has alarming implications for all persons who use a video camera or any other recording device. The Legislature was clear in its intent: This law was to protect persons from intrusive and invasive private recording—a "Peeping Tom" law for this ever-more digital world. Yet under the majority's interpretation of the statute, virtually any use of a recording device could prove to be a felony. Under their reasoning, many persons who utilize recording devices in otherwise legal employment might be criminals. Beware then to the television reporter who covers a high school football match and conducts interviews in the team's locker room. Beware also to the private investigator who is lawfully paid by a spouse to record the night-time activities of a straying mate. Under

19

the majority's view of the law, any "lewd intent" might be established if the camera happens to zoom in on a sensitive area of the person's body.

¶42. The majority's elimination of two critical elements from the crime of video voyeurism distorts legislative intent and violates centuries-old, fundamental principles of due process. Because the State has failed to provide sufficient evidence of all the elements of the crime, I would reverse Gilmer's conviction.

**GRAVES AND DICKINSON, JJ., JOIN THIS OPINION.**

**DICKINSON, JUSTICE, DISSENTING:**

¶43. To be clear, Gilmer did not video someone who believed she was enjoying a moment of privacy where she could not be seen or filmed. Gilmer is charged with video taping Clayton at a time when she was fully clothed and sitting in a place where she freely admits that people outside in the parking lot could see her. While Gilmer's conduct may be bizarre, distasteful, and perhaps even civilly actionable, it does not constitute voyeurism. Voyeurism is not taking pictures of a person who is aware that the public may be looking. What an absurdity for the law to allow one to stand and look with impunity at a person who knows they are being looked at, but the moment a picture is taken or a video is made, the looker becomes a voyeur, that is to say, a criminal.

¶44. Debra Clayton freely admits she was aware that anyone in the parking lot of her apartment complex could easily see her while she was sitting in front of her balcony door. Thus, from the State's (and the majority's) point of view, even though Clayton knew that

Gilmer (and others) might be looking at her, they could not take a picture of what they saw without violating Mississippi Code Annotated Section 97-29-63 (the "Voyeur Statute").

¶45.    According to its very language, the Voyeur Statute is violated only when the person photographed or videotaped is in a place where that person has a reasonable expectation of privacy.  By Clayton's own admission, there was no expectation of privacy where the video was made, and, therefore, the Voyeur Statute was not violated.  For this reason, and for those stated by Justice Diaz in his dissent, I respectfully dissent.

**DIAZ, P.J., AND GRAVES, J., JOIN THIS OPINION.**