# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00816-COA

**THOMAS GILMORE**                                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2017 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: BENJAMIN A. SUBER |
| | THOMAS GILMORE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/16/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND C. WILSON, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     A Forrest County jury convicted Thomas Gilmore of burglary of a dwelling and sexual battery. The Forrest County Circuit Court sentenced Gilmore to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC) for the burglary of a dwelling conviction and twenty-five years for the sexual battery conviction. The trial court ordered that the sexual battery sentence run consecutively to the burglary of a dwelling sentence. After the trial court denied Gilmore's posttrial motions, Gilmore appealed.

¶2.     Gilmore's appellate counsel filed a brief in compliance with *Lindsey v. State*, 939 So.

2d 743 (Miss. 2005), certifying to this Court that the record presented no arguable issues for appeal. Gilmore then filed a pro se brief asserting the following assignments of error: (1) his indictment was defective; (2) the State failed to meet its burden of proving an essential element of sexual battery; (3) his conviction was against the weight of the evidence; (4) there was insufficient evidence to support the verdict; and (5) his counsel provided ineffective assistance.

¶3.    After our review of the appellate briefs and the record before us, we find that Gilmore's appeal presents no arguable issues. We therefore affirm Gilmore's conviction and sentence.

**FACTS**

¶4.    In July 2016, Gilmore was indicted for one count of burglary of a dwelling (Count I) and one count of sexual battery (Count II) stemming from an incident that occurred on November 2, 2014.

¶5.    Kewonna Bolton testified that on November 2, 2014, at around 2:30 a.m., she woke up and discovered a man standing next to her bed.  He had his fingers inside of her and was fondling her.  Bolton screamed out for her boyfriend, Frank Denard, who was asleep next to her in the bed.  Bolton testified that after she screamed, the intruder walked out of the bedroom.  Denard called out to ask who was there, and the intruder returned to the bedroom.  According to Bolton, the intruder yelled to Denard: "Now I got to kill you[.]"  Bolton testified that Denard and the intruder "tussl[ed]" over her and that she was pinned down underneath them.  At one point, the intruder picked up a lamp from Bolton's bedside table

2

and hit Denard across the head.  Bolton testified that she "caught the butt end of the lamp." The intruder then ran out of the room, and Bolton called the police.

¶6.    Bolton testified that she could not identify the intruder because all of the lights in the house were off.  However, Bolton stated that she could tell that the intruder was a male and that he was wearing a white t-shirt.

¶7.    Denard testified that in the early hours of November 2, 2014, he woke up when he heard Bolton calling out his name.  Denard stated that he observed someone standing next to Bolton's side of the bed.  Denard called out and asked who was there, and the intruder ran out of the room and then returned.  Denard testified that when the intruder returned to the bedroom, he yelled to Denard: "I got to kill you now."  Denard testified that the intruder began to attack him, and Denard fought back.  Eventually the intruder left the house, and Bolton called 911.

¶8.    Officer Erik Mitchum of the Hattiesburg Police Department testified that on November 2, 2014, he responded to a 911 call reporting a burglary.  When Officer Mitchum arrived on the scene, Denard answered the door and was visibly upset.  Officer Mitchum observed that Denard was bleeding and that his lip was swollen.  Bolton was sitting on the couch crying.  Officer Mitchum entered the bedroom and observed that it "was a mess. Everything was scattered around."  He testified that he saw blood on a pillow and blood on the bed.  Officer Mitchum testified that after examining the crime scene, he determined that the intruder entered the home through a window in the kitchen.

¶9.    Investigator Jeff Byrd, a crime scene investigator with the Hattiesburg Police

3

Department, testified that he processed the crime scene and collected evidence at Bolton and Denard's house. The evidence collected included: a wristwatch, a toboggan, a bandana, a skullcap, fingernails, a broken cigarette, an unused but open condom, a pillow case with a blood stain, and a cell phone. Investigator Byrd sent the evidence to the State crime lab for testing. Investigator Byrd also testified that the police department eventually collected a DNA swab from Gilmore's mouth and sent it to the State crime lab.

¶10.  Detective Narottam Holden testified that on November 2, 2014, he worked as a detective for the Hattiesburg Police Department and responded to the 911 call regarding the burglary at Bolton and Denard's house. Detective Holden testified that after collecting a cell phone from the crime scene, he received a call on the phone. Detective Holden answered the phone. He testified that the caller was Gwendolyn Loflin, who informed Detective Holden that the cell phone belonged to her son, Apaullo Williams. Detective Holden contacted Williams. Williams informed Detective Holden that prior to 2:00 a.m. on November 2, 2014, he was hanging out with Jermaine Young and Gilmore, and Gilmore requested to borrow Williams's phone. Williams told Investigator Holden that he eventually let Gilmore borrow the phone. Williams then provided Detective Holden with the passcode so that Detective Holden could examine the contents of the phone. Detective Holden testified that around 10:50 p.m. on November 1, 2014, someone had logged into Gilmore's Facebook account on the phone and posted material on Facebook.

¶11.  Williams testified at trial that he and Gilmore are brothers. On the evening of November 1, 2014, Williams stated that he, Gilmore, and Jermaine Young were at Williams

4

and Gilmore's mother's house. According to Williams, Gilmore asked to borrow Williams's phone. Williams gave Gilmore his phone at approximately 9:00 p.m., and then Gilmore and Young left the house. Williams testified that after giving Gilmore his phone, Williams did not leave the house again that night.

¶12.  Jana Burchfield, a forensic biologist with the Mississippi Crime Laboratory, testified as an expert witness in the field of DNA analysis. Burchfield testified that she conducted a DNA analysis on the evidence collected from Bolton and Denard's house. Burchfield stated that the DNA taken from the toboggan and skullcap recovered from the crime scene matched the DNA samples obtained from Gilmore.

¶13.  After a trial held January 11 and 12, 2017, the jury found Gilmore guilty of Count I (burglary of a dwelling) and Count II (sexual battery). The trial court sentenced Gilmore to serve fifteen years in the custody of the MDOC for Count I and twenty-five years for Count II, with the sentence in Count II to run consecutively to the sentence in Count I. Gilmore filed posttrial motions, and the trial court denied the motions.

¶14.  On June 13, 2017, Gilmore appealed his conviction, sentence, and the denial of his posttrial motions. Gilmore's counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), stating that there were no arguable issues to support an appeal. In *Lindsey*, the Mississippi Supreme Court set forth the procedure to be followed when a defendant's attorney does not find any arguable issues to support an appeal. *Id*. at 748 (¶18). On October 10, 2018, Gilmore filed his pro se supplemental brief.

**DISCUSSION**

5

¶15.    In *Lindsey*, the Mississippi Supreme Court adopted a procedure "to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Lindsey*, 939 So. 2d at 748 (¶18).  First, "counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5),(8)]." *Id*.  In the brief,

> counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Id*.  Next, counsel must forward a copy of the brief to the client, informing the client that counsel was unable to discover any arguable issues in the record and advising the client that he or she has a right to file a pro se brief. *Id*.  If the defendant's pro se brief raises any arguable issue or the appellate court discovers any arguable issue in its review of the record, then "the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal." *Id*.  After the completion of the briefing, "the appellate court must consider the case on its merits and render a decision." *Id*.

¶16.    In the present case, Gilmore's appellate counsel submitted a brief in compliance with *Lindsey*. Gilmore then filed a pro se supplemental brief, asserting the following assignments of error: (1) his indictment was defective; (2) the State failed to meet its burden of proving an essential element of sexual battery; (3) his conviction was against the weight of the

evidence; (4) there was insufficient evidence to support the verdict; and (5) his counsel provided ineffective assistance. We now turn to address the issues raised in Gilmore's pro se brief.

## I.    Defective Indictment

¶17.    Gilmore argues that his indictment is defective for failing to include the words "as and within the jurisdiction of this court" in Counts I and II.

¶18.    "This Court reviews de novo the question of whether an indictment is fatally defective." *Townsend v. State*, 188 So. 3d 616, 619 (¶10) (Miss. Ct. App. 2016). We recognize that "[a]n indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Davis v. State*, 171 So. 3d 537, 540 (¶11) (Miss. Ct. App. 2015) (quoting *Gilmer v. State*, 955 So. 2d 829, 836-37 (¶24) (Miss. 2007)). "So long as from a fair reading of the indictment, taken as a whole, the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Id*. (quoting *Harrison v. State*, 722 So. 2d 681, 687 (¶22) (Miss. 1998)).

¶19.    After a review of the record, we find that Gilmore did not object to the contents of the indictment at the trial level and therefore waived this issue for appeal. *Jerninghan v. State*, 910 So. 2d 748, 750 (¶4) (Miss. Ct. App. 2005). "When 'the formal defect is curable by amendment . . . the failure to demur to the indictment in accordance with our statute' will waive the issue from consideration on appeal." *Id.* (quoting *Gray v. State*, 728 So. 2d 36, 70

7

(¶169) (Miss. 1998)).

¶20.    Despite this procedural bar, we find that Gilmore's indictment was sufficient. Count I of Gilmore's indictment charged him with burglary of a dwelling, in violation of Mississippi Code Annotated section 97-17-23 (Rev. 2014). Count I set forth as follows:

> in Forrest County, Mississippi, on or about November 2, 2014, [Gilmore] did unlawfully, willfully, feloniously, and burglariously break and enter the dwelling house of Kewanna Bolton and/or Frank Denard, located at 407 Claiborne Avenue, Hattiesburg, Mississippi, with the intent to commit a crime therein: Sexual Battery, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶21.    Gilmore's indictment on Count I contains the essential elements of burglary of a dwelling and therefore meets the first requirement of an indictment. *See Conner v. State*, 138 So. 3d 158, 167 (¶29) (Miss. Ct. App. 2013) ("Burglary of a dwelling has two essential elements: (1) breaking and entering of the dwelling house of another and (2) intent to commit some crime therein."); *see also* Miss. Code Ann. § 97-17-23(1).

¶22.    Count II of Gilmore's indictment charged him with sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(a). Count II set forth as follows:

> [I]n Forrest, Mississippi, on or about November 2, 2014, [Gilmore] did willfully, purposely, unlawfully and feloniously commit Sexual Battery upon Kewanna Bolton, without the consent of the said Kewanna Bolton, by engaging in the act of sexual penetration, to-wit: digital penetration of Kewanna Bolton's vagina, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶23.    Count II of Gilmore's indictment also contained the essential elements of the offense of sexual battery. *See* Miss. Code Ann. § 97-3-95(1)(a) ("A person is guilty of sexual battery if he or she engages in sexual penetration with another person without his or her consent.").

8

¶24. Furthermore, it is well-established that "[i]ndictments that track the language of the Mississippi Code are sufficient to provide notice of the crime charged." *Pitts v. State*, 249 So. 3d 472, 475 (¶8) (Miss. Ct. App. 2018) (quoting *Graves v. State*, 216 So. 3d 1152, 1158 (¶12) (Miss. 2016)). Gilmore's indictment tracks the language of the statutes set forth in section 97-17-23 and section 97-3-95(1)(a), respectively, and provided the essential elements of the offense of sexual battery. Gilmore's indictment also sets forth the date and the names of the victims. *See Gilmer*, 955 So. 2d at 836-37 (¶24). We find no merit to Gilmore's argument that his indictment was defective.

## II. Essential Element of Sexual Battery

¶25. Gilmore argues that the State erred by failing to have Bolton state her age and date of birth. Gilmore claims that the age of the victim "is a vital essential element of proof" for sexual battery. Gilmore cites to *Washington v. State*, 645 So. 2d 915, 920 (Miss. 1994), where the supreme court reversed the case because the State failed to prove the victim's age.

¶26. In *Washington*, 645 So. 2d at 917, the defendant was charged with sexual battery pursuant to Mississippi Code Annotated section 97-3-95(1)(c), which states "a person is guilty of sexual battery if he or she engages in sexual penetration with: . . . (c) A child under the age of fourteen (14) years." (emphasis added). In the present case, Gilmore was charged under section 97-3-95(1)(a), which states that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with another person without his or her consent." The age of the victim is not an essential element of section 97-3-95(1)(a). Accordingly, the State did not have to set forth proof as to Bolton's age. We find this issue lacks merit.

9

### III. Weight of the Evidence

¶27. Gilmore argues that since the State failed to prove the age of the victim, Gilmore's conviction was against the weight of the evidence. Gilmore asserts that the failure of the State and the trial court "to make known the victim[']s age" violates his right to due process.

¶28. "This Court reviews challenges to the weight of the evidence by viewing 'the evidence in the light most favorable to the verdict' and determining whether the verdict is 'so contrary to the overwhelming weight of the evidence that to allow it to stand would bring about an unconscionable injustice.'" *Williams v. State*, 136 So. 3d 446, 450 (¶13) (Miss. Ct. App. 2014) (quoting *Jones v. State*, 95 So. 3d 641, 647 (¶20) (Miss. 2012)).

¶29. As previously stated, the age of the victim is not an essential element of section 97-3-95(1)(a), the statute under which Gilmore was charged. Gilmore's argument therefore lacks merit. Additionally, Gilmore provided no authority or explanation to show how his due process rights were violated. Arguments made on appeal "shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(7); *Gray v. State*, 202 So. 3d 243, 260 (¶63) (Miss. Ct. App. 2015).

### IV. Sufficiency of the Evidence

¶30. Next, Gilmore argues that the State failed to present "enough" evidence to prove that Gilmore committed any crime. Gilmore maintains that no one saw him in the house, and the victims testified that they could not see who was in the house. Gilmore also asserts that the items found at the house "could have been left by anyone."

¶31. We apply a de novo review to challenges to the sufficiency of the evidence. *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018). In so doing, we view the evidence "in the light most favorable to the State." *Id*. "The relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *Hearn v. State*, 3 So. 3d 722, 740 (¶54) (Miss. 2008)).

¶32. At trial, Bolton and Denard testified that an uninvited intruder was in their home during the early morning hours of November 2, 2014. Bolton testified that she woke up and discovered a man standing next to her with his fingers inserted into her vagina. Officer Mitchum testified that the intruder entered the house through a window in the kitchen. Detective Holden testified that he recovered a phone from the crime scene, which he eventually connected to Williams. Williams testified that he let his brother, Gilmore, use his phone on the evening of November 1, 2014. Detective Holden also testified that someone had accessed Gilmore's personal Facebook account and made a post at 10:50 p.m. on November 1, 2014, approximately four hours before the incident at Bolton and Denard's house. The State also submitted evidence showing that Gilmore's DNA was found on items collected from the crime scene.

¶33. After our review, we find that the State presented sufficient evidence to establish the essential elements of burglary of a dwelling and sexual battery. Gilmore's argument regarding the sufficiency of the evidence lacks merit.

## V.  Ineffective Assistance of Counsel

¶34. Finally, Gilmore argues that his counsel was ineffective. In support of his claim,

11

Gilmore restates his first four assignments of error as proof of his trial counsel's ineffective service: his trial counsel failed to object to a faulty indictment; his trial counsel failed to object to the State's failure to set forth the age of the victims; his trial counsel "should have objected to the weight of the evidence as it violates due process"; and his counsel should have objected to the insufficient evidence presented at trial.

¶35. In order to succeed on a claim for ineffective assistance of counsel, Gilmore must show that his counsel's performance was deficient and that the deficiency prejudiced the defense of his case. *Burns v. State*, 813 So. 2d 668, 673 (¶14) (Miss. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Generally, ineffective assistance claims are more appropriately brought during postconviction-relief (PCR) proceedings." *Ford v. State*, 205 So. 3d 1172, 1177 (¶19) (Miss. Ct. App. 2016) (quoting *Havard v. State*, 94 So. 3d 229, 240 (¶35) (Miss. 2012)). As to claims for ineffective assistance of counsel raised on direct appeal, this Court has held that the merits of such claims "should be addressed only when (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial court." *Id.* (quoting *McSwain v. State*, 163 So. 3d 966, 969 (¶10) (Miss. Ct. App. 2014)).

¶36. After our review, we find that the record before us fails to affirmatively show ineffective assistance of counsel. The parties have also failed to stipulate that the record is adequate to allow this Court to make a finding without consideration of trial court's findings of fact. *See id.* at 1177-78 (¶20). Additionally, Gilmore failed to assert any facts or legal

12

authority to support his claim that his attorney's actions were improper. Accordingly, we deny relief on this issue without prejudice so that Gilmore may raise his claim of ineffective assistance of counsel in PCR proceedings.

¶37. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**