United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 27, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-30344

IN THE MATTER OF: WHITAKER CONSTRUCTION COMPANY, INC.,

Debtor,

WHITAKER CONSTRUCTION COMPANY, INC.,

Appellant,

versus

BENTON & BROWN, INC.; LS DECKER, INC.;
MCNEER ELECTRICAL CONTRACTING, INC.;
MARTIN SPECIALTY COATINGS, INC.;
OAK CLIFF MIRROR & GLASS, INC.;
OVERHEAD DOOR COMPANY OF SHREVEPORT, INC.;
THOMPSON DRYWALL & INTERIORS, INC.,

Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

Before GARZA, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Whitaker Construction Company, Inc. ("Whitaker") appeals from the district court's judgment

affirming the bankruptcy court's grant of summary judgment for Benton & Brown, Inc., LS Decker,

Inc., McNeer Electrical Contracting, Inc., Oak Cliff Mirror & Glass, Inc., Overhead Door Company

of Shreveport, Inc., Thompson Drywall & Interiors, Inc. (collectively the "Claimants"). Whitaker

argues that the bankruptcy court erred in holding that the Claimants timely filed their claim statements. Whitaker contends that the bankruptcy court's conclusion was based on an erroneous interpretation of the Louisiana Public Works Act, LA. REV. STAT. 38:2241 *et seq*. For the following reasons, we reverse the ruling of the district court and render judgment for Whitaker.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On July 19, 2000, Whitaker and the City of Shreveport (the "City") entered into a standard construction agreement. This construction agreement called for renovations to Independence Stadium, a sports facility owned and operated by the City. The renovations entailed the construction of a "South End Zone Shell Package," which consisted of concession areas, bathrooms, and club seating in the south end zone of the stadium. Alliance, Inc. ("Alliance"), a Shreveport architectural firm, was designated the project architect. The agreement was recorded in the Caddo Parish public records on July 26, 2000. Fidelity & Deposit Company of Maryland ("Fidelity") issued a statutory payment bond on behalf of Whitaker, pursuant to the Louisiana Public Works Act, LA. REV. STAT. 38:2241 *et seq*, guaranteeing that those supplying labor and materials to the project would be paid.

The project was scheduled to be completed by July 31, 2001. By December 2001, the project had not been completed, nonetheless, on December 27, 2001, the NCAA's Independence Bowl football game was played in the stadium.

On January 8, 2002, an Alliance representative issued a certificate of substantial completion for the project; representatives for Whitaker and the City signed the document on that same date. The original date of issuance, January 8, 2002, was changed to read December 22, 2001. On January 10, 2002, the certification of substantial completion was filed in the Caddo Parish public records. The City's endorsement of the document stated that "[t]he Owner [City] accepts the work or designated

2

portion as substantially complete and will assume full possession at noon, 12:00 p.m. (time) on December 22, 2001 (date)." Whitaker's endorsement stated that "[t]he Contractor [Whitaker] will complete or correct the Work on the list of items attached hereto within thirty (30) days from the above date of Substantial Completion." However, work on the project continued for the next several months, until at least April 25, 2002.

The Claimants were subcontractors and suppliers to Whitaker on the Independence Stadium project. On June 21, 2002, the first in a series of claim statements were filed on the project by various claimants, all invoking the Public Works Act. Later that year, Whitaker voluntarily petitioned for bankruptcy. Whitaker sent demand letters to claimants requesting that they cancel their claims because Whitaker argued that the claim statements were all untimely filed. Some claimants complied; the Claimants currently before this court are those who refused to cancel their claims.

Whitaker filed this adversary proceeding in bankruptcy court against the Claimants, requesting a declaratory judgment that the Claimants' claim statements were untimely because they were not filed in the public records within 45 days of the City's recorded acceptance of the project on January 10, 2002. Whitaker and the Claimants each filed cross-motions for summary judgment on the timeliness issue; the motions centered on the interpretation of § 2241.1 of the Public Works Act. A hearing on the issue took place on August 11, 2003.

On October 7, 2003, the bankruptcy court denied Whitaker's motion and claim for attorney's fees, and granted summary judgment in favor of the Claimants. The bankruptcy court ruled that the City's recorded acceptance of the project was nullified because the project was not completed within 30 days after the purported substantial completion. The bankruptcy court interpreted § 2241.1 of the Public Works Act to mean that acceptances cannot be recorded "unless either the job is complete or

3

it is substantially complete and actual completion occurs within 30 days." The bankruptcy court thereby held that the 45-day claim period under the Public Works Act had never begun to run because of the City's prematurely recorded acceptance. Whitaker appealed this decision to the Western District of Louisiana. The district court adopted the bankruptcy court's findings and affirmed the judgment. Whitaker timely appealed, claiming legal error in the bankruptcy court's and the district court's interpretation of the Public Works Act.

STANDARD OF REVIEW

Rule 7056 of the Federal Rules of Bankruptcy Procedure governs summary judgment in an adversary proceeding in bankruptcy court. Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure. FED. R. BANK. P. 7056. Under Rule 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

"Bankruptcy court rulings and decisions are reviewed by a court of appeals under the same standards employed by the district court hearing the appeal from bankruptcy court; conclusions of law are reviewed *de novo*, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed *de novo*." In re CPDC, Inc., 337 F.3d 436, 441(5th Cir. 2003).

A district court's determination of state law is also reviewed *de novo*. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case. Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992).

4

I.       Interpretation of Louisiana's Public Works Act

Under the Public Works Act, whenever a public entity enters into a contract for the construction, alteration, or repair of any public work in excess of $25,000, the contractor is required to obtain a bond with a surety.  LA. REV. STAT. 38:2441.  The statute requires the bond for the purpose of protecting persons contributing to the construction or repair of public works; i.e., subcontractors, laborers and other persons not in direct privity with the public entity.  JAMES S. HOLLIDAY, JR. & H. BRUCE SHREVES, LOUISIANA CONSTRUCTION LAW MANUAL 196 (1991).

In order for a subcontractor or laborer to protect their claim, they must file a sworn statement of the amount due  with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.  LA. REV. STAT. 38:2242.  The sworn statement must be filed after the maturity of his claim and within 45 days after the recordation of acceptance of the work.  Id. § 2242.

The controversy at issue here centers on whether the Claimants timely filed their claim statements.  A certificate of substantial completion was signed by Whitaker and the City and filed in Caddo Parish on January 10, 2002.  The Claimants argue that the acceptance was premature, and therefore a nullity, and as a result the 45-day time period never expired because it never began to run. Whitaker counters that the recordation of acceptance was valid, and therefore, the Claimants were required to file their claims by February 24, 2002.  Our resolution of the dispute depends on our interpretation of the relevant statute defining the requirements for proper recordation of acceptance.

A.      Parties' Arguments

Section 2241.1 of the Public Works Act provides in relevant part that:

Whenever the public entity enters into a contract for the construction, alteration, or repair of any public works . . . the official representative of the public entity shall have recorded in the office of the recorder of mortgages, in the parish where the work has been done, an accept ance of said work or of any specified area thereof upon substantial completion of the work.  This acceptance shall not be executed except upon the recommendation of the architect or engineer of the public entity whose recommendation may be made upon completion or substantial completion of said public works within thirty days of completion of the project.

LA. REV. STAT. 38:2241.1.  Specifically at issue is what "within thirty days of completion of the project" modifies.  This latter phrase was added to the statute by a 1991 amendment.  1991 La. Sess. Law Serv. 947 (West).

Whitaker contends the grammatical structure of the revised sentence makes plain that the purpose of the 1991 amendment was to place a deadline on the architect or engineer responsible for recommending acceptance.  Whitaker presents a hyper-technical analysis of the disputed sentence that dissects its syntax and structure, illuminating the prepositional and subordinate phrases and seeking to connect them to compound objects and adjective clauses.  Whitaker's main argument is that the phrase "within thirty days" modifies "recommendation of the architect or engineer."  Whitaker asserts that the result is the sentence should be read: "acceptance shall not be executed except upon the recommendation of the architect or engineer of the public entity [*whose recommendation may be made upon completion or substantial completion of said public works*] within thirty days of completion of the project."  In other words, the City's designated architect may accept the public work either upon completion or substantial completion, but regardless, the architect or engineer must accept the public work within thirty days of completion of the project.  Whitaker asserts that the

6

amendment was added to address the evil of slow architects and engineers delaying the recordation of acceptances.

The Claimants, unsurprisingly, disagree. The Claimants instead argue that the legislature added the 1991 amendment in order to address an inverse problem, namely, prematurely recorded acceptances. Prior to the amendment, the Claimants argue that the broad language of the statute allowed contractors and public entities to abuse their discretion by recording acceptances significantly premature. The purpose of the amendment, they assert, is to prevent situations exactly like the one at hand where certificates of substantial completion are filed months before actual completion. Furthermore, they assert that based on the plain language of the statute the sentence should be read: "acceptance shall not be executed except upon the recommendation of the architect or engineer of the public entity whose recommendation may be made upon [*completion*] or [*substantial completion of said public works within thirty days of completion of the project*]." The Claimants are essentially asserting that the City's architect is given the option of accepting the public work upon completion of the project or upon substantial completion of the project, but acceptance in the latter circumstance is perfected only if completion follows within thirty days. The Claimants argue that if the architect or engineer accepts the project upon substantial completion but completion does not occur within thirty days, then the previously recorded acceptance is null as premature. The Claimants' arguments were accepted by the bankruptcy court and upon appeal were adopted by the district court.

Whitaker rebuts the Claimants' interpretation of the statute by asserting that it is counter to the plain language of the sentence and inconsistent with the purpose of the Public Works Act. First, Whitaker argues that the statute states that an acceptance "shall" be recorded upon substantial completion thereby making recordation compulsory upon substantial completion. Substantial

7

completion is defined "as the finishing of construction . . . to the extent that the public entity can use or occupy the public work or use or occupy the specified area of the public works for the use for which it was intended." Id. § 2241.1. Here, it is undisputed that the City used and occupied the stadium on December 27, 2001, for the Independence Bowl game. Thus, Whitaker argues that the project was substantially complete and the City was therefore required to record the acceptance.

Additionally, Whitaker argues that the recording of acceptance is crucial to the operation of the statute because a number of other parties' interests depend on their notice of the public entity's acceptance. Whitaker contends that recording the acceptance in the public record is crucial to secure a certain date for notice so that other time periods defined in the statute can begin to run. Whitaker asserts that the bankruptcy court's construction of the statute denies other parties the ability to rely on the recorded acceptance.

Finally, Whitaker argues that the bankruptcy court's construction of the statute violates principles of statutory interpretation by adopting the least restrictive interpretation and subjecting the surety to open-ended liability.[1]

---

[1] We recognize the arguments submitted by the Surety Association of America (SAA) in their amicus brief filed on behalf of Whitaker Construction. SAA submitted documents from the scant legislative history of the 1991 amendment, which it asserts demonstrates that the purpose of the amendment was to address situations where the public entity delayed making a recommendation for acceptance upon substantial completion or completion. SAA contends that contractors successfully lobbied the legislature to add the thirty-day time period to the statute so that the public entity would promptly file the acceptance to start the 45-day period and close out the project. To support this assertion, the SAA points to the statements of two representatives made during conferences regarding the 1991 amendment. The Claimants observe that the legislative history also contains the statement that "there was concern over approval of jobs being sought prior to completion," which they contend supports their position. Moreover, they cite case law which counsels against relying on statements from only two of the 100 plus members of the state legislature, to divine the purpose of the amendment. Finally, they object to the introduction of the legislative history of the amendment because it had not been raised as an issue in this case up to this point nor is it in the record. Indeed, in the transcripts of the bankruptcy proceedings, counsel for Whitaker stated that he could find no

8

Whitaker relies on Honeywell, Inc. v. Jimmie B. Guinn, Inc., to support its argument that the performance of work more than 30 days after the notice of acceptance and substantial completion is filed, does not render the acceptance premature. 462 So.2d 145 (La. 1985). In Honeywell, the subcontractor did not complete his work on the public works project until more than 45 days after the public entity recorded its acceptance of the project in the public record. Id. at 147. The state court did not expound upon that fact in its discussion and never considered whether the acceptance was recorded prematurely. Ultimately, the court concluded that the subcontractor's suit was time barred. Id. at 149. However, as the Claimants note, the state court decided Honeywell before the 1991 amendment. In fact, the Claimants argue that Honeywell serves to further emphasize that prior to the 1991 amendment, premature acceptances were a problem in public works projects, which contravened the purposes of the Public Works Act by divesting subcontractors and laborers of their statutory rights.

The Claimants argue that Whitaker's interpretation is the version that does damage to the purposes of the statute. First, they note that the statute states that claimants are to file their claims "*upon maturity of his claim <u>and</u>* within forty-five days of recordation of acceptance." LA. REV. STAT. 38:2242 (emphasis added). The Claimants argue that interpreting the statute to allow the public entity to record an acceptance months before actual completion would result in the 45 day period expiring before some subcontractors' or laborers' claims have even matured because those potential claimants are still working on the project.

Furthermore, the Claimants argue that Whitaker's interpretation of the statute is faulty because of other absurd results. For example, if the 30 days referred to in the statutory provision is

support or guidance in the legislative record for his position.

9

indeed a deadline before which the architect or engineer must record acceptance then it is possible that the deadline could lapse without action and the 45-day period would never begin to run. The Claimants argue that they would never be able to make a claim and receive protection from the Public Works Act. The Claimants contend that by contrast under their interpretation an acceptance could always be filed anytime after completion and therefore there is no possibility that a third party's delay could permanently divest the Claimants of their rights under the statute.

The relevant portions of the statute are poorly drafted to be sure. The ambiguity in the meaning and grammatical structure of the provision at issue makes both constructions of the statute at least possible, when viewing the disputed sentence in isolation. However, after taking into consideration the arguments of the parties, the relevant case law, and the Public Works Act as a whole, we find that § 2241.1 should be interpreted as requiring public work projects that are accepted based on substantial completion to be completed within 30 days of purported substantial completion.

B.      Analysis

The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. In re Succession of Boyter, 756 So.2d 1122, 1128 (La. 2000). When a law is susceptible to different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law." LA. CIV. CODE art. 10; SWAT 24 Shreveport Bossier, Inc. v. Bond, 808 So.2d 294, 302 (La. 2001); Smith v. Town of Vinton, 25 So.2d 237, 239 (La. 1946) (stating that "in applying a statute to specific cases it is necessary to determine the intent of the Legislature in enacting it," so as to not interpret the statute in a manner that the legislature never intended). Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be

10

avoided.  <u>Bond</u>, 808 So.2d at 302.  Furthermore, "[c]ourts should avoid constructions which will render legislation absurd.  Rather, statutes must be interpreted in such a manner as to render their meaning rational, sensible, and logical."  <u>State Through Dept. of Public Safety and Corr., Office of State</u>, 655 So.2d 292, 302 (La. 1995).

The purpose of the Public Works Act is to protect those not in direct privity with the governing authority, namely the subcontractors and other parties who supply materials and labor to the construction or repair of a public work.  <u>Slagle-Johnson Lumber Co., Inc. v. Landis Const. Co., Inc.</u>, 379 So.2d 479, 486 (La.  1979).  "The purpose of the statute is evident from both its text and the title indicative of its object.  The Public Works Act title, in pertinent part, provides that it was enacted: '. . . to protect persons doing work, performing labor or furnishing material for the construction, erection, alteration or repair of public buildings, public roads or public works of any character; . . .'" <u>Slagle-Johnson</u>, 379 So.2d at 486 n.** (quoting Act No. 224 of 1918).

The Louisiana legislature recognized that in contrast to privately owned property, subcontractors and laborers of public works could not secure payment for their work by placing a privilege or lien against the property because the property has no private entity as an owner.  JAMES S.  HOLLIDAY, JR.  & H.  BRUCE SHREVES, LOUISIANA CONSTRUCTION LAW MANUAL 196-201 (1991).  Claimants could preserve their interest by freezing the further distribution of payments under the contract.  <u>Id.</u> at 196.  If funds are paid out in violation of the freeze, the governing authority is personally liable for the claim.  <u>Id.</u>  The Public Works Act shifts the risk of loss from the governing authority to the surety and contractor through contract and bond requirements.  <u>Id.</u>

As previously noted, we must interpret the provision in a way that best comports with the legislative intent of the statute.  LA. CIV. CODE art. 10.  Here it is clear that the legislative intent in

11

enacting the statute was to protect those who provide labor and materials to public works and to shift the risk of loss that may result from claims by those parties to the contractor and the surety. The Claimants' construction of the statute is most consistent with the purpose of the statute. Moreover, although the statute is unquestionably poorly drafted, resulting in more than one possible reading of the disputed sentence, we conclude that the interpretation presented by the Claimants offers a less constrained reading of the plain meaning of the provision at issue. For instance, Whitaker argues that the language of the statute dictates that acceptance be recorded immediately upon substantial completion. However, that argument is inconsistent with Whitaker's contention that the 30-day time period applies to the architect or engineer's recommendation for acceptance, i.e., that the 30 days is essentially a deadline before which the architect or engineer must record acceptance. In other words, it is inconsistent to say that the statute mandates that acceptance be filed *immediately* upon substantial completion and then say that the very same provision gives the public entity the flexibility of recording acceptance any time within 30 days after final completion of the project.

Most importantly, interpreting the statute to require that completion follow within 30 days of substantial completion in order for the recorded acceptance to be valid, avoids absurd results surely not intended by the legislature. As the Claimants observed, interpreting the statute to allow the public entity to record acceptance significantly before final completion actually occurs would result in the 45-day period expiring before some subcontractors' or labors' claims have even matured because those potential claimants are still working on the project. A subcontractor or laborer can not know that he has a claim for the collection of withheld payments on a public works project until he has at least stopped working on the project, had a chance to assess payment due and, if necessary, make a demand of payment. At oral argument, counsel for the Claimants emphasized that some of

12

his clients in fact were still working on the Independence Stadium project well after the 45-day period had expired. Indeed, it is undisputed that work continued until at least April 25, 2002, even though the 45-day period to submit a claim statement assessing the amount due expired on February 24, 2002. To require a subcontractor to file claim statements before they have finished working on the project is not feasible because the subcontractor can not make a claim for an uncollected debt when that debt has not even had time to accrue.[2]

In addition, § 2242 mandates that a claimant file written claim statements "after the maturity of his claims and within 45 days from the recordation of acceptance." Therefore, not only would it be absurd to interpret the statute to allow the 45-day period to expire before work has been completed, such an interpretation would conflict with the prescription in the statute that claim statements be filed after the claims have matured.

We do not find, as Whitaker argues, that the Claimants' statutory interpretation is inconsistent with the plain language of the statute and would contravene the purposes of the statute. Instead, for the reasons stated, we find that the Claimants' interpretation of the statute best comports with the purpose of the statute and prevents absurd results. Accordingly, we find that the bankruptcy court,

---

[2] At oral argument, Whitaker asserted that final completion should not be required to occur 30 days after substantial completion because construction frequently continues months after substantial completion. First, we note that completion must occur 30 days after purported substantial completion only if the acceptance is recorded based on substantial completion. Moreover, Whitaker's observation further supports *not* adhering to Whitaker's statutory interpretation. If Whitaker's assertion is correct then subcontractors may frequently be prevented from asserting claims on a public works project because they were still working on the project months after acceptance based on substantial completion was filed. Considering the statute was enacted to *protect* subcontractors' interests in collecting debts on a public works project, interpreting the statute to frequently prevent just that objective would be contrary to the legislative purpose.

13

and the district court, were correct in adopting the Claimants' interpretation of the language in the disputed provision.

Although the City recorded a certificate of substantial completion in the public record on January 10th, it is undisputed that work continued well beyond 30 days from that date. Because the recorded acceptance was based on substantial completion and substantial completion did not occur within 30 days of purported completion, the City's acceptance of the project was premature.

II.     How to Cure a Premature Acceptance

The harder question to resolve is whether the premature filing of the certificate of substantial completion renders the acceptance a nullity. Upon determining that final completion must occur 30 days after substantial completion, if the project is accepted based on substantial completion, the bankruptcy court held that the City's premature acceptance was null and void. The bankruptcy court opined that the only way to cure the prematurely recorded acceptance was to file another acceptance that complies with the statute. The statute states that an acceptance should be filed in order to begin the 45-day period. Because neither the City nor Whitaker[3] ever filed a subsequent acceptance that complied with the statute, the bankruptcy court held that the 45-day period never began to run, and therefore, the Claimants' claims could not be untimely.

The bankruptcy court offered no authority for its finding that the premature acceptance should be rendered a nullity. The district court offered no authority to support the bankruptcy court's

_____

[3] Under § 2241.1 of the Public Works Act, either the public entity or the contractor can file the acceptance. LA. REV. STAT. 38:2241.1 ("the official representative of the public entity shall have recorded in the office of the recorder of mortgages, in the parish where the work has been done, an acceptance of said work or of any specified area thereof upon substantial completion of the work. Those public entities which do not file said recordation, shall require the contractor to have recorded in the office of the recorder of mortgages, in the parish where the work has been done, an acceptance of said work or of any specified area thereof upon substantial completion of the work.").

conclusion when the district court adopted the bankruptcy court's ruling. Before this court, the Claimants assert that the bankruptcy court was correct in its decision, however, they also offer no authority for the bankruptcy court's conclusion. They simply assert that making the acceptance null, and requiring Whitaker or the City to submit another acceptance, is the only cure that is "workable." Despite our best efforts, we have found nothing in the statute that supports the conclusion that a premature acceptance is null or that supports requiring the City or Whitaker to file any number of certificates of substantial completion until an acceptance complies with the requirements of the statute. We therefore reject the Claimants' arguments. Instead, we find that the bankruptcy court impermissibly expanded the scope of remedies available to the Claimants by declaring that Whitaker's acceptance was null.

The Public Works Act restricts contractors from entering into a contract with the state until the contractor obtains a payment bond. LA. REV. STAT. 38:2241. Laws of limitation are to be strictly construed if there are any ambiguities in the law. Ruiz v. Oniate, 713 So.2d 442, 444-45 (La. 1998). The Public Works Act, like other lien statutes, is "*sui generis* and provides exclusive remedies to parties in public construction work." State Through Div. of Admin. v. McInnis Bros. Const., 701 So.2d 937, 944 (La. 1997) (citation omitted). "[P]ublic contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes," and the obligations of the bond "must be limited to the *exact* provisions of the statute." Id. (emphasis added). The Public Works Act is preemptive rather than prescriptive, meaning the existence of the rights granted therein are extinguished if not filed within the time period prescribed and the applicable time period can not be suspended or interrupted. Id. at 948.

In keeping with Louisiana principles of statutory interpretation, the statute here must be strictly construed so as to prevent extending the obligations of the surety or the privileges granted to the subcontractors beyond that warranted by the statute. The bankruptcy court declared that filing the certificate of substantial completion too early rendered the acceptance a nullity and as a result the 45-day lien period never began to run. According to the bankruptcy court, because of the prematurely filed acceptance, months after even final completion the surety could be subject to liability to claimants who had still not filed a claim statement. Under that scenario, today, almost 3 years from when construction finally ended, a claimant could file a suit against the surety to collect on debts owed from the Independence Stadium project because Whitaker never filed a corrected acceptance. However, § 2241.1 states that sureties are only liable for claims filed within a 45-day window. The Public Works Act was enacted for the purpose of protecting the interests of those who supply materials and labor to public works contracts; but by limiting the time in which a claimant can enforce that right, the Public Works Act balances both the interests of the protected group and the interests of the surety. By infinitely expanding the time that the surety may be subject to liability, and the Claimants may be permitted to file suit, the bankruptcy court afforded the Claimants privileges that are not granted by the statute. See id. at 946 (holding that the Public Works Act sets forth a precise period of time to govern the filing of suits [in that case a suit by a state entity against a general contractor or its surety] and to suspend or interrupt that period for any reason would render the time limitations in the statute meaningless).

To determine a resolution more consistent with the statute, and in the absence of cases construing the Public Works Act under these circumstances, we turn to case law regarding the Private Works Act for guidance because the state courts have addressed this identical issue, premature

16

recording of acceptances, with regard to the Private Works Act. In <u>Lighting, Inc. v. Trans-Gulf</u>

<u>Const. Co., Inc.</u>, the state district court granted judgment against a contractor and surety on a

contractor's bond because formal acceptance by the owner was prematurely filed; the state court held

that as a result of the premature filing the statutory prescription period never began to run. 324 So.2d

454, 455 (La. 1975). The Louisiana Supreme Court reversed the judgment and dismissed the suit.

<u>Id.</u> Under the Louisiana Private Works Act, the subcontractor had to file his claim statement within

30 days of recordation of acceptance by the owner. <u>Id.</u> The owner could record an acceptance of

work upon either completion or "upon substantial completion of the work, or any specified area

thereof, upon the recommendation of the architect or engineer of the owner." <u>Id.</u> The state district

court found that the work was not complete or substantially complete on the date of the registry of

acceptance so the acceptance was null. <u>Id.</u> at 456. In reversing the state district court, the Louisiana

Supreme Court held that a premature acceptance is not null but rather is inchoate and becomes

operative when the building is complete or substantially complete. <u>Id.</u>

> An acceptance is a notice of completion. It becomes operative when it conforms to the facts of construction. We think the better view is that prematurely recorded acceptance is inchoate and becomes operative when the building is complete or substantially complete. At that time, the two essential factors concur: recordation and completion. To hold otherwise would mean that the misjudgment of the owner in assessing substantial completion, though in good faith, would defeat the prescription in favor of the surety contrary to the legislative purpose.

<u>Id.</u> The court observed that even assuming that the acceptance was filed prematurely, the

subcontractor's suit was not filed within 30 days from the date the parties agreed the project was

substantially complete. <u>Id.</u> Therefore, the subcontractor's suit was dismissed as untimely. <u>Id.</u>

Particularly instructive to us on the matter of nullity is the Louisiana Supreme Court's

admonition in <u>Lighting</u>:

17

> We find nothing in the statute which allows an owner's premature acceptance to wipe out the one-year prescription in favor of the surety. To impose such a penalty on the surety should require clear statutory authority.

Id.

Citing no case law, the bankruptcy court dismissed the argument that the prematurely filed acceptance could be inchoate rather than null. The bankruptcy court in its oral rendering of judgment, and the district court in adopting the bankruptcy court's opinion, gave minimal attention to Lighting. The bankruptcy court opined that Lighting was not applicable because it was governed by the Private Works Act, whereas this case is governed by the Public Works Act. Moreover, the bankruptcy court noted that the Private Works Act does not require private owners to record an acceptance in the public record while the Public Works Act does require a recordation of acceptance. We hasten to agree with the bankruptcy court's observation and we thoroughly appreciate that Lighting is not controlling because the Private Works Act does not govern this case. However, we sit as a Erie court who must divine what the Louisiana Supreme Court might do if faced with the same facts as those before us.[4] Although the Louisiana Supreme Court has not made a definite pronouncement on this exact issue, Louisiana's highest court has stated that where an acceptance is not perfected as a matter of law, that acceptance is inochate. More importantly, the Louisiana Supreme Court stated that declaring an acceptance a nullity would be a penalty imposed upon the surety, because of the miscalculation of a third-party, that can only be levied pursuant to express

---

[4] It is axiomatic that as an Erie court we attempt to discern how Louisiana's highest court would resolve the issue at hand. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (emphasizing that federal courts can not make common law on matters reserved to the states). That doctrine is no less applicable where, as here, we are addressing an unsettled area of Louisiana law. It is incumbent upon us to avoid creating new rights and remedies in Louisiana state law where we lack express statutory authority or clear directive from the Louisiana Supreme Court.

18

statutory authority.  The case before us is not governed by the Private Works Act and the Private Works Act is distinguishable from the Public Works Act in many respects; however, we find the principle in Lighting, that declaring an acceptance a nullity requires express statutory authority, is a principle in positive law that is very persuasive to us.  The bankruptcy court did not–nor did the district court or the Claimants–offer any statutory authority for declaring an acceptance a nullity under the Public Works Act, therefore, *ipso facto*, we hold that we can not impose such a penalty upon the surety here.

Moreover, we conclude that for our purposes, the relevant provisions of the statutes are substantially indistinguishable.  The Private Works Act, like the Public Works Act, was enacted to provide protection for subcontractors and other claimants and provide for a source for payments should the general contractor fail to pay.  Metropolitan Erection Co., Inc. v. Landis Const. Co., Inc., 627 So.2d 144, 148 (La. 1993).  However, because the Private Works Act and the Public Works Act are lien statutes that grant special privileges to claimants that are not provided for by contract, both statutes also seek to protect the interests of the sureties who issue the bonds.  Id.  Therefore, as here, the Louisiana Supreme Court in Lighting had to balance the dual purposes of the statute of protecting the claimants as well as protecting the interests of the surety.  In addition, in both Lighting and the present case, the parties were subject to a payment bond.  The private owners in Lighting and the public entity here both recorded an acceptance of the work in the public record based upon substantial completion.  See Lighting, 324 So.2d at 455.  Both subcontractors were required to submit a claim statement within a specified period of time from the recordation of acceptance.[5]  Even the definitions

---

[5] "Before any person having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he must record his claim as provided in R.S. 9:4802

of substantial completion are identical.[6]  For all the reasons stated, we find the reasoning employed in Lighting to be persuasive in resolving the issue currently before this court.

In order to determine when the recorded acceptance became operative, the Lighting court sought to ascertain when the project was substantially complete.  Here, in order to determine when the recorded acceptance became operative we would have to determine if and when substantial completion occurred within 30 days of completion, or when the project was complete.  Even though the Independence Bowl game was played on December 27, 2001, the parties dispute whether the project was substantially complete at that time.  Although, the stadium as a whole was sufficiently useable to allow the game to be played, the project at issue only concerned the construction of concession areas, bathrooms, and club seating in the south end zone of the stadium.  As to those specific portions of the stadium, there was at least anecdotal evidence that the bathrooms were not

---

or give written notice to said contractor within thirty days from the recordation of the notice of acceptance by the owner of the work or notice by the owner or default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. . . ." Lighting, 324 So.2d at 455.

"Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done." LA. REV. STAT. 38:2242.

[6] "'Substantial completion' is defined for the purposes of the Chapter, as the finishing of construction, in accordance with contract documents as modified by any change orders agreed to by the parties, to the extent that the owner can use or occupy the works or use or occupy the specified area of the works for the use for which it was intended." Lighting, 324 So.2d at 455.

"'Substantial completion' is defined for the purpose of this Chapter, as the finishing of construction, in accordance with the contract documents as modified by any change orders agreed to by the parties, to the extent that the public entity can use or occupy the public works or use or occupy the specified area of the public works for the use for which it was intended." LA. REV. STAT. 38:2241.1.

complete at the time of the game. Whitaker emphasizes that the certificate of substantial completion filed in the public record stated that the project "has been reviewed and found, to the Architect's best knowledge, information and belief, to be substantially complete." The Claimants assert that the certificate of substantial completion was signed by the architect not because the project was actually substantially complete, but rather in order to pass title to the City in time for the Independence Bowl game. Otherwise, Whitaker would have been liable for any accidents that occurred during the game. That is why, the Claimants charge, the certificate of substantial completion was backdated to ensure that the certificate reflected that the project was accepted before the date of the game. The Claimants contend that whether the project was actually substantially complete at the time of recordation was not a fact that was stipulated to in the bankruptcy court nor is there any evidence in the record to support such a conclusion.

We need not make a definite determination of when substantial completion actually occurred in accordance with the statute. The record reflects that the parties agreed that the project was finally complete by April 25, 2002,[7] thus, the recorded acceptance became operative by that date. The first claim was not filed until June 21, 2002. None of the claims were filed within 45 days of completion. Although we may sympathize with the Claimants' position as subcontractors who have not been compensated for their work, unfortunately the claim statements filed by the Claimants were all untimely.

## CONCLUSION

---

[7] In the bankruptcy proceedings, specifically in the hearing on the motion for summary judgment, counsel for both Whitaker and the Claimants agreed that the construction project was finally completed by April 25, 2002. Counsel also agreed that although a change order on the project was recorded after that date, the change order regarded work that had already been done.

21

For the aforementioned reasons, we REVERSE the district court's ruling affirming the grant of summary judgment for the Claimants on the timeliness issue and we render judgment for Whitaker.

REVERSED and RENDERED.