BEAM, JUSTICE,
DISSENTING:
¶ 32. Our principal duty as Mississippi’s court of last resort is to consider impartially the decisions-of the courts below and rule on matters through sound reasoning and common sense. This duty is especially rigid when we review those matters in light of any applicable statutes. As a remedy intended for a select few, the Wrongful Conviction Compensation Act was established to provide prompt assistance to the wrongfully eonvicted through monetary amends. In establishing the Act, oúr Legislature carved out this cause to provide adequate and prompt justice and restoration to the'wrongly convicted; requiring the petitioner to bear the burden of proving the elements of the'Act by a preponderance of the evidence. Miss. Code Ann. § 11-44-7 (Rev. 2013). On appeal, it becomes “[o]ur duty [] to carefully review statutory'language and apply its most reasonable interpretation and meaning to the facts of a particular case.” Pope v. Brock, 912 So.2d 935, 937 (Miss. 2005). In so doing, we cannot throw common sense to the wind. Instead, we must use the established laws and years of precedent, coupled with the Court’s wisdom and reason to determine the legislative intent behind the elements of the Act.
¶ 33. The remedy provided by the Wrongful Conviction Compensation Act is unique in that it recognizes the need to redress the injuries suffered by innocent individuals languishing in prison. Throughout the country, states have established similar acts providing for compensation to factually innocent people who have been wrongfully convicted. Mississippi, like our sister states, established the Wrongful Conviction Compensation Act with the intent to remove some of the financial obstacles incurred by the factually innocent and ease their transition back into society. Miss. Code Ann. § 11-44-1 (Rev. 2012). To that end, when strictly construed, the Act was intended to apply to -a minority of select cases. Because I find that Edmonds failed to meet the specific criteria to prove he was entitled to compensation through the Act, and that no genuine issue of material fact exists as to his intent to bring about his conviction under the statute, I respectfully dissent.
I. While Mississippi Code Section H-44_7(l)(c) includes an element of intent as it relates to the fabrication of evidence, the Act does not provide for an element of intent as to a claimant’s effort to “bring about his conviction.”
¶ 34. The majority outlines a linguistic argument for the interpretation of a specific portion of the statute in question, However, I find that this analysis is flawed in two distinct areas: the argument ignores the intent requirement found in the element of fabrication and it implies that the clause “to bring about his conviction” lacks causation. This labored description of the statutory language results in a technical explanation of what the author views as the overarching question, at hand: why did the claimant fabricate evidence? This question leads to several responses, all with one common theme: to protect his sister Kristi. The majority concludes that this denotes intent, and as a result, an issue of material fact exists as to Edmonds’s intent (or lack of intent) to bring about his conviction through the falsified confession. Reviewing the majority opinion, a reader would infer that the circuit court failed to consider Edmonds’s reason behind the ini *297 tial confession — most notably questioning why Edmonds would confess if he did not commit the crime. Resultantly, the majority would have the Court remand the question to the circuit court for resolution on that issue. But, because the circuit court already reviewed- and answered the question at its bench trial on the matter— directly addressing Edmonds’s reason and motive behind his actions — I see no purpose in remanding the cause.
A. Intent to Fabricate
¶ 35. The majority defines the statute’s pertinent language to provide the Gourt with a “plain reading” of the law. Following this suggestion, if we divide the applicable section of the statute into two elements, it appears that the argument- the majority makes for Edmonds is that intent exists in both parts. In the first part, the statute provides that “[h]e did not ... fabricate evidence.” Miss. Code Ann. § 11-44-7(l)(e) (Rev. 2012). There, the section plainly requires an intent to fabricate — an interpretation to which the circuit court and the parties agreed. A key component of the proceedings under Section 11-44-7 is the plaintiffs burden to prove the elements under the statute before the court can enter a judgment in his favor. Miss. Code Ann. § 11-44-7(1). Importantly, this required that Edmonds prove “a negative” and show by a preponderance of the evidence that he did not invent or concoct a false confession. In an effort to meet this burden, Edmonds argued that, although he falsified the confession which lead to the jury’s conviction, he' lacked the requisite intent to fabricate that evidence under the statute. He then framed his argument to show that he was “pressured to give a false confession” by both his .sister and law-enforcement officials, and that this confession was not a free and deliberate decision on his part.
¶ 36. Counsel for Edmonds urged the lower court to recognize that, because fabrication requires some type of intent to mislead, and because Edmonds’s only motive was to protect his sister, he in no way intended his statement to bring about his conviction.- His only aim was to protect Kristi. His attorneys claimed- that, under these circumstances, Edmonds’s .motivation to fabricate should serve as an exception under the statute, overriding any intent to deceive. However, throughout the trial, the circuit judge halted questioning and arguments to rule on the admissibility of evidence and to delineate between the issues of motive to fabricate and intent to fabricate. On the subject, the trial court held that,’ while the fabrication requirement included an' element of intent, the plaintiffs motivation behind his fabrication was not relevant. .According to the court, while “fabricate” may embrace an element of intent, it does not involve an element of motive. The court ruled that, although Edmonds advocated a coercion exception -to the statute, his motive in making the confession was not relevant for the purpose of the trial, noting that “by the common definition of the word [fabricate], it appears that there was a false confession made.”
¶ 37. Ultimately, the circuit court found that Edmonds had failed to prove that he lacked any intent to fabricate evidence. Recognizing that our courts “do not engage in statutory interpretation if a statute is plain and unambiguous,” the judge determined that Edmonds’s attempt to illustrate the formation of motive through coercion read mofe into the statute than the Legislature intended. Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Mississippi Div. of Medicaid, 21 So.3d 600, 607 (Miss. 2009). Because our “[c]ourts have a duty to give statutes a practical application consistent with their wording,” the judge properly dismissed Edmonds’s suggestion that a *298 coercion-based exception exists in the statute. Marx v. Broom, 632 So.2d 1315, 1318 (Miss. 1994). I find no error in the judge’s interpretation of the first part of the statute or his eventual ruling that Edmonds had failed to satisfy his burden to prove that he did not fabricate evidence through the falsified confession.
B. Intent to Bring About, Cause, or Contribute
¶38. The latter part of the pertinent subsection requires that the claimant “did not ... fabricate evidence to bring about his conviction.” Miss. Code Ann. § 11-44-7 (emphasis added). Throughout its analysis, the majority fails to find that the phrase “to bring about his conviction” plainly indicates an element of causation. Instead, it suggests that the language creates a factual question as to the intent to be incarcerated. Ultimately, the function of the Court is to determine what the written language of the statute provides. Lawson v. Honeywell Int’l, Inc., 75 So.3d 1024, 1027 (Miss. 2011) (citing Russell v. State, 231 Miss. 176, 94 So.2d 916, 917 (1957)). Howeyer, “[i]f the words , of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction.” Id. (citing Clark v. State ex rel. Miss. State Med. Ass’n, 381 So.2d 1046, 1048 (Miss. 1980)); see also Gilmer v. State, 955 So.2d 829, 833 (Miss. 2007). Here, we must not broaden or restrict legislative acts; rather, we must give effect to the intent of the Legislature through the plain meaning of the statutes. Id. Therefore, I cannot agree with the majority that this statute requires such an elaborate dissection, as the words of the Act present clear requirements for a claimant’s burden of proof.
¶39. In both this appeal and at trial, Edmonds argued that an issue of material fact exists as to his reason for fabricating the confession. As discussed above, he claims that, because he was coerced to confess by a host of outside forces, the com-ts should create an exception to the statute for those who confess without “free and deliberate intention.”-But the majority focuses its attention on the claimant’s failure to fabricate evidence with the “aim, purpose, or intention of bringing .about his conviction.” Unlike the majority, I fail to see where an issue of fact exists. I think the better question to be addressed is: if such a claimant, of a sound and willing mind, made a false confession under these circumstances without the “aim, purpose, or intention of bringing about his conviction,” what , other outcome might he think was possible? Are we to suggest that, although no one authoritatively told him that his youthfulness or age did not make him immune from any punishment, his naivete is an adequate excuse and he is free to receive compensation from the State for a product of his own error? I think not.
¶ 40. In its ruling, the circuit court addressed the need for the false confession to bring about the conviction by labeling it as '“causation.” There, the court determined that the plaintiffs alleged false confession caused or contributed to his conviction at his first trial. During the civil trial, the State argued that Edmonds’s criminal conviction was a direct result of his confession: without the confession, the jury in the first criminal trial had no other evidence upon which to convict.' Counsel for Edmonds, however, focused on the reasons behind his fabrication, creating a narrative about his motive rather than his intent. Edmonds argued that, under Kristi’s coercion, he was focused on shifting blame for the murder off his sister, to himself. The court again ruled that motive was not an element of the statute, and any arguments regarding his reasons to falsify the confession were irrelevant. Edmonds then failed *299 to present any other arguments that he did not falsify his confession “to bring about his conviction.” As a result, the court ruled that Edmonds simply had failed to support his burden to show that his conviction was not proximately caused or contributed to by his confession.
¶ 41. The majority holds that intent to “bring about” and intent to “cause or contribute” are different concepts under the law. I disagree. The Wrongful Conviction Compensation Act plainly requires that a plaintiff show that “[h]e did not ... fabricate evidence to bring about his conviction.” Miss; Code Ann, § 11 — 44—7(l)(c). Therein, the language creates an element of intent, which serves as the causal factor leading to the eventual effect of the plaintiffs decision. More simply stated, the fabrication of evidence — the cause — brought about the conviction — the effect.
¶ 42. Though the majority makes a convincing argument that Edmonds may have lacked the requisite intent to be incarcerated, the statute plainly requires intent only as it relates to fabrication. A party’s desired outcome upon fabrication is irrelevant: whether a defendant intended to be incarcerated, fined, or to evade penalty altogether was not the Legislature’s concern when it drafted the Act. Rather, the clear and unambiguous terms under the statute require that the fabricated evidence lead to a conviction. It matters not that the conviction included jail time, community service, or a fine, because the language at the end of the statute merely describes the effect of the plaintiffs actions in fabricating evidence. As with any crime, conviction was the natural and probable consequence of Edmonds’s false confession. Therefore, while intent remains a crucial part of this statute, I find that it ends at Edmonds’s decision to fabricate evidence.
¶ 43. Having determined that “to bring about” involves an element of causation, my analysis turns to the trial court’s' findings to address whether an issue of material fact exists. A reading, of the trial transcript clearly reveals one does not. Repeatedly throughout the trial, the court and the parties discussed the causation requirement and whether the fabrication brought about the conviction. Specifically, counsel for the plaintiff explained that “the parties are iii agreement ... that the legislature engrafted a causation requirement on the issue of fabrication, which is to say if the fabrication brought about the conviction.” The court then explained that “the court’s view is that if the fabrication of the evidence contributed to the conyietion, then in that event it would bar the plaintiff from recovery in this case .... So the opinion o'f the court is, unless you can quote me some authority different ... to present its ... defense of fabrication [the State] would need only to show that [the fabrication] caused or contributed to [the conviction].” Moreover, the circuit court provided both parties' assistance, instructing Edmonds’s attorney that he needed “to persuade the court that his ... conviction was not proximately caused or contributed to by the confession,” while the State need show only that Edmonds “fabricated evidence which caused or contributed to his being found guilty in the first trial.”
¶44. In discussing the testimony and evidence proffered by the parties, the lower court questioned the attorneys at length to ensure all arguments and elements regarding causation were submitted to the court before the trial ceased. With the court’s questions directed to the State, the following discourse took place between the judge and the parties:
BY THE COURT: The evidence that I’ve seen that you produced in support of that theory is that there was no scie *300 ntific or physical evidence or any eyewitness testimony as to his guilt.
BY THE STATE: Yeah; the—
BY THE COURT: So basically his finding of guilty came on the — based on the confession that he made?
BY THE STATE:' The'only direct evidence against him was that — his own creation. His own fabrication.
BY THE COURT: But as far . as his participation in it, there.was nothing other than his confession. Am I correct?
BY THE STATE: That is correct, Your Honor. Yes, that is correct. .
BY THE COURT: Am I correct?
BY COUNSEL FOR EDMONDS: Yes, Your Honor.
The record makes it clear that the court was diligent in its role as the factfinder. The judge asked several specific questions of the parties, reviewed testimony and record evidence, and made a judgment based on the requireménts of the statute. Substantially supported and without error, the court found that Edmonds had failed to prove by a preponderance of evidence that he did not fabricate evidence to bring about his conviction.
¶45. Assuming for a moment that the majority is correct in its finding that intent through “aim or purpose” is crucial to the second half of Section ll-44-7(l)(c), I nevertheless find no question of fact as to whether Edmonds intended his false confession to bring about his conviction. The facts as presented to the court clearly indicated that, even at thirteen years old, Edmonds was able to understand the gravity of the situation before him. Testimony showed he was a bright young man. His mother testified that he had an IQ of 119, which denotes above-average or superior intelligence. He was in the gifted program at school and maintained above-average reading and • comprehension . skills. Although his sister may have convinced him that his status as a minor provided a level of protection- from eventual punishment, Tyler testified at the first trial, “I would say we did it together so that way it would be helping Kristi, but I was kind of scared about getting'in trouble too. ...”
¶ 46. The most pivotal indication of his intent (aim or purpose), though, is found in his confession to his neighbor, Marcus Sullivan. Edmonds made his first confession to police on Sunday, after which he was arrested and then booked into the jail. By Wednesday, he was still in jail and attempting to get in touch with his mother and grandmother. After several attempts, he called Marcus Sullivan in hopes that he would pass along a message to his mother. Sullivan testified in the first trial regarding this call, explaining that “[Edmonds] asked had I heard about Joey, and I said I had. There was a pause and I asked him, did you do it? He said, Yes, sir.’ ”
¶ 47. At this point, if Edmonds lacked the requisite intent, aim, or purpose, to bring about his conviction through the false confession, his presence in jail and his impending arraignment would serve as clear notice that his youth was not going to save him from trial or a possible conviction. As a minor of above-average intelligence, with gifted levels of reading and comprehension skills, if he did not intend to “shift the blame” from his sister by confessing to a crime and then being convicted, why would he continue to confess with his potential punishment so glaringly obvious? He would not. Whether that conviction amounted to incarceration, work-release, or a fine, Edmonds displayed time and again that he comprehended the gravity of the situation.[5] With no argument or *301 evidence presented to the contrary, the judge recognized this apparent understanding and ruled accordingly.
. ¶ 48. Related to this decision is the concern that publishing the majority’s opinion will misconstrue an unambiguous statute and set a dangerous precedent for future claims under the Wrongful Conviction Compensation Act. At issue in the criminal trials and'the civil matter before us was Edmonds’s claim that several factors created an environment of coercion and led to his choice' to fabricate the confession. He asserted that he confessed only to save his sister. Throughout his testimony in the first trial,[6] Edmonds explained that his sister had assured him that his status as a minor would protect him from punishment, and that by sharing the blame, he .would be able to help her escape th$ death penalty. However, he als.o indicated a concern for his own shelter from the authorities if his youthfulness did not, in fact, shield him. Through his testimony and his call to Marcus. Sullivan, Edmonds indicated that he, was actively trying to protect Kristi, but that he also was aware of the very real possibility that he too would be punished.
¶ 49. “The duty of this Court -is to interpret the statutes as written. It is not the duty of this Court to add language where we see fit. ‘[0]ur primary objective when construing statutes is to adopt that interpretation which will meet the true meaning of the Legislature.’ ” Scaggs v. GPCH-GP, Inc., 931 So.2d 1274, 1276 (Miss. 2006) (quoting Stockstill v. State, 864 So.2d 1017, 1022-23 (Miss. 2003)). In doing so, we must “interpret statutes consistent with reason and common sense,” applying the most rational meaning of the words. Dulaney v. Nat’l Pizza Co., 733 So.2d 301, 305 (Miss. Ct. App. 1998); “Furthermore, ‘[cjourts should avoid constructions which will render legislation absurd. Rather, statutes must be interpreted in such a manner as to render-their meaning rational, sensible, and logical.’ ” In re Whitaker Constr. Co., Inc., 411 F.3d 197, 205 (5th Cir. 2005) (quoting State Through Dep’t of Public Safety and Corr., Office of State, 655 So.2d 292, 302 (La. 1995)).
¶ 50.' Drawing on the Court’s judicial experiencé and coíhmón sense, no rational reading 'Of the Wrongful Conviction Compensation Act'¿reates an inference that the Legislature intended a third-party, coercion-based exception to apply. Nor can it be said that the Legislature embedded an exception for those convicted by acts of their own error to receive compensation when they riéver intended "“to go to j ail.” Such' interpretations border' on absurdity arid cannot be supported. See Quitman Cty. v. Turner, 196 Miss. 746, 18 So.2d 122, 124 (1944) (citing Robertson v. Texas Oil Co., 141 Miss. 356, 106 So. 449 (1925)). Where it is evident that thé Legisláture aimed only to’'compensate the factually innocent when uniquely victimized through an erroneous incarceration, we must enforce that'’purpose and not read into the statute more than the" drafters' intended. “Legislators must be presumed to be reasonable and sane men, ‘and to intend the natural, direct, and probable consequences *302 of their acts, that these shall not be absurdly or unreasonably construed, and therefore that they intend to avoid absurdities and nonsense.’ ” Kennington v. Hemingway, 101 Miss. 259, 57 So. 809, 810 (1912) (quoting 4 Hughes, Grounds and Rudiments of the Law, 1104 (1908)). Plainly stated: statutes are to be interpreted logically, with the most reasonable interpretation applied. Considering the issue at hand, under what circumstances would safeguards of this statute apply if they did not apply here?
¶ 51. Although the majority is not ruling in favor of Edmonds by remanding the cause for a finding of fact, it indicates that the Court would consider affirming a judgment in favor of a claimant who had a “good reason” to lie about his involvement in a crime, only to be exonerated and then sue the. State for convicting him based on that same false confession. This ruling would go too far, while twisting the words behind the statue. Those who drafted the Act did not allow for motive in the statute as a consideration for compensation because a claimant’s motive is not relevant. Likewise, the statute places no importance on the reason for fabrication. It requires only that evidence was not fabricated in an effort to cause or contribute to the claimant’s conviction. Therefore, I suggest the Court reflect on the words of the statute and consider the likelihood that the language “to bring, about” is causative in nature and does not require simply that a claimant intended to be incarcerated.
II. The plaintiff was not entitled to a jury trial.
¶52. I stand by the principle plainly articulated in our state Constitution that “the right of trial by jury shall remain inviolate.” Miss. Const, art. 3, § 31. However, having found no question of material fact exits in the matter, I do not think this case merits reversal and remand for a trial by jury.
¶53. In its opinion, the majority cites several cases acknowledging that, when faced with a statute silent on the issue, this Court customarily has recognized the right to a jury trial. . But because the circuit court judge properly ruled on the matter, determining that the parties had agreed on the facts at issue and the only question remaining was an interpretation of law,- no rational jury could have found that Ed-monds was entitled to compensation through the Act. With the facts established and the law defined, the request for a jury becomes inconsequential.
¶ 54. Assuming arguendo that the circuit judge erred in denying Edmonds the right to a jury, his decision is of no consequence to resolution of the matter and can be viewed as nothing more than harmless. For the sake of discussion, to warrant reversal, the judge’s decision to deprive 'Edmonds of a jury must have “affect[ed] the final result of the case and work[ed] adversely to a substantial right of the party assigning it.” Bay Point Props., Inc. v. Mississippi Transp. Comm’n, 201 So.3d 1046, 1056 (Miss. 2016) (citing Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss. 1969)). See also Gray v. State, 799 So.2d 53, 61 (Miss. 2001). Here, it is clear that if the parties had presented their case before a jury, at the conclusion of proof and upon proper motion, the judge would have arrived at the same conclusion, thereafter granting the State’s inevitable motion for directed verdict. As discussed supra, the lower court held that, while the fabrication requirement in the statute involved an element of intent, the plaintiffs motivation behind his fabrication was not relevant. Both parties agreed that, by the common definition of the word “fabricate,” the false confession was an obvious fabrication of *303 evidence. The discussion leading to this agreement served as the only portion of the hearing which focused on disputed issues of fact, leaving no factual questions to be answered thereafter.
¶ 55. Moving on to the second part of the statute, attorneys for both the plaintiff and the State agreed as a matter of fact that, during the plaintiffs first trial, only the plaintiffs confession linked him to any participation in the killing. However, the parties differed on their interpretation of the law and whether the statute required that the false confession caused or contributed to his conviction. While counsel for Ed-monds argued that his motivation to fabricate was an important factor for the court to consider, the judge reiterated that motivation was not a material element of the statute. The State then argued that the element in question was causative in nature and required that Edmonds prove that his confession did not cause him to be convicted (i.e., but for the admission of the fabricated evidence, he would not have been convicted). Having ruled that Ed-monds’s interpretation of the statute was erroneous and that he presented no other arguments to the contrary, the judge found that the plaintiffs confession unquestionably caused or contributed to his conviction at his first trial.
¶ 56. Just after counsel for Edmonds concluded its case-in-chief, the representative for the State remarked that “[njormally I would have a motion, Your Honor, but this being nonjury, I will not.” Here, the defense clearly provided that its intent— had there been a jury trial — would be to make a Rule 50 motion for directed verdict at this point. See M.R.C.P. 50. Though, because the judge was to rule directly on the case with or without the presentation of evidence by the State, the representa-five opted to proffer several trial-testimony transcripts for the court’s review prior to its' ruling. The brief introduction of these transcripts into evidence concluded the State’s presentation, after which it rested its case.
¶ 57. A review of the hearing and the evidence submitted provides that, with or without a jury, the matter would conclude with the same result: in either scenario, Tyler Edmonds fails — as a matter of law— to support his burden to show that his fabrication of evidence was not in an effort to bring about his conviction. As we have said before, “an error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no [other] verdict .... ” Gray v. State, 799 So.2d 53, 61 (Miss. 2001) (citing Forrest v. State, 335 So.2d 900, 903 (Miss. 1976)). Because Edmonds failed to meet his burden and the circuit judge properly would have granted the State’s motion for directed verdict, his decision to conduct a bench trial is of no consequence. Accordingly, I find that if the circuit judge erred in requiring a bench trial on the matter, that error was nothing more than harmless and his decision should stand.
¶ 58. Therefore, I respectfully dissent with the majority opinion and would affirm the circuit court’s ruling based on the reasoning and caselaw outlined above.
RANDOLPH, P.J., MAXWELL AND CHAMBERLIN, JJ„ JOIN THIS OPINION IN PART.

. The majority quotes an important part of Edmonds’s testimony in which he notes that *301 his intent was not to "go to prison” or to "get sent to jail." (Maj. Op. ¶ 17). While Edmonds may not have sought to protect Kristi by being incarcerated himself, his remaining testimony and previous actions clearly indicate that he thought his “conviction” may have led to other punishments, which (in his mind) may not have been serving jail or prison time. His perception of what sentences may have resulted is not relevant, however, as his conviction . and eventual sentence are two separate matters.

. The transcript from the first trial was 'submitted by Edmonds as evidence of the pres- . :sure his sister applied to encourage him to confess to the murder.